McCOY *v.* STATE

[No. 80, September Term, 1957.]

*Decided April 21, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Fred E. Weisgal,* with whom were *Stanley Sollins* and *Weisgal & Sollins* on the brief, for appellant.

*Stedman Prescott, Jr., Deputy Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City,* and *Saul Harris, Deputy State's Attorney,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

William Oscar McCoy, the defendant below and the appellant here, after a general verdict of guilty by the Criminal Court of Baltimore (Joseph L. Carter, J., sitting without a jury) on all four counts of an indictment charging him with several violations of the narcotic drug law, [Code (1951), Art. 27, secs. 346 and 369], was sentenced to ten years in the Maryland Penitentiary. From the judgment and sentence the defendant has appealed.

In substance the defendant was charged by the first and second counts of the indictment with unlawfully having in his possession *and* under his control a narcotic drug, known as heroin, on July 19, 1956. The third and fourth counts, after first *reciting* a previous conviction and sentence, *charged* the defendant with having been convicted and sentenced for having heroin in his possession *and* under his control on December 23, 1954, and with *unlawfully* having in his possession *and* under his control a narcotic drug, known as heroin, on July 19, 1956.

On July 19, 1956, a police lieutenant and two officers, who suspected the defendant of violating the narcotic drug law, searched an informer. Finding no money on his person he was furnished with $15.00 in marked bills and was instructed to purchase narcotics from the defendant. The police officers and the informer proceeded to Preston Lounge, a tavern in the vicinity of Central Avenue and Hoffman Street in Baltimore City, arriving at their destination about 9:15 P.M. One of the officers entered the tavern. The other stationed

himself about half a block from the tavern, and released the informer to make contact with the defendant. The outside officer, who knew the suspect, saw the informer give something to the defendant. He entered the tavern forthwith. The informer waited outside within sight of the outside officer. The defendant, after a brief stay, came out of the tavern and gave the informer an object. The informer delivered the object to the outside officer, who identified it as a cellophane package containing three capsules of white powder. The powder was subsequently analyzed by a U. S. Customs chemist as heroin hydrochloride, a derivative of opium. The inside officer, having followed the defendant out of the tavern, attempted to arrest him, but he fled and got away. He was not apprehended until two days later on July 21, 1956. The marked bills were not found.

The inside officer, having taken an advantageous seat in the tavern, saw the informer talk to the defendant and give him some U. S. currency, whereupon the defendant entered the tavern, approached the bar and spoke to the barmaid. The conversation was not heard but the officer saw the defendant go to the rear of the bar and return and pass out of the front door where he met the informer. After waiting for a prearranged signal from the outside officer that he had received the package, he left the tavern to make the arrest.

On the date he was arrested, the defendant was questioned by the police lieutenant. He admitted knowing the informer, but denied selling the heroin to him, but when confronted with a narrative of what the police officers had seen, he made a statement in the presence of the lieutenant and his secretary, who took down the statement and subsequently transcribed it. The statement was not signed by the defendant, and it is not certain he knew his statement was being taken by the secretary. According to the lieutenant the defendant admitted receiving the money from the informer who wanted five capsules, which he obtained from the operator of the tavern and gave to the informer.

At the trial the lieutenant testified that the defendant had been previously arrested on a similar charge in 1954. This fact was corroborated by a deputy clerk of the Criminal Court

of Baltimore, who tesified that the defendant was tried and convicted on January 14, 1955, of possession and control of narcotic drugs, and was sentenced to two years in the Penitentiary. The secretary corroborated the lieutenant's testimony as to the statement made by the defendant on the date he was arrested. A search of defendant's person and his apartment when arrested did not reveal any narcotic drugs.

The defendant, in an effort to establish an alibi, called a friend who testified that on July 19, 1956, he met the defendant about 5:30 P.M. and remained with him in a tavern having drinks until 9:30 P.M. when they left to meet the defendant's wife and children. The defendant, who took the witness stand, testified that his wife and children had gone to a movie in the afternoon, after which he left them at the home of his mother-in-law, and joined his friend to have some drinks at a tavern on Dallas Street. They left the tavern at approximately 9:30 P.M. to pick up his wife and children and to go home, but instead of going directly home he went to a residence on East Chase Street and played cards. On cross examination he admitted having a criminal record, including a previous conviction for possession of heroin in 1954. He denied admitting to the police lieutenant any knowledge of the offense for which he was subsequently indicted.

Although the defendant asked one of the police officers several questions concerning the informer, he never made demand upon the State to disclose the name of the informer, either before or during the trial, or to call him as a witness. At the trial the name of the informer was disclosed by the police lieutenant without a demand, but the defendant made no effort to summon him then, and he had not summoned him prior to the trial.

The defendant contends (i) that the failure of the State to produce the informer amounted to a denial of due process and that the evidence in the case without the testimony of the informer was insufficient to warrant a conviction; and (ii) that the defendant did not receive a fair and impartial trial.

Ordinarily, the State has a privilege of non-disclosure and is not required to divulge the name of a person who furnishes

information of violations of law to an officer charged with enforcing the law.[1] There are several exceptions to the general rule. One exception, with which we are concerned in this case, is applied whenever the informer was an integral part of the illegal transaction. Anomalous as it may seem, there are also exceptions to the exceptions, two of which are important here: (i) the informer was already known to the accused, and (ii) the accused failed to make a proper demand for the name or identity of the informer at the trial.

There are authorities that hold that an accused will be denied his constitutional rights if he does not know the informer, who was an integral part of the illegal transaction, and expressly makes a proper demand for the disclosure of his identity. In *Roviaro v. United States*, 353 U. S. 53 (1957), the petitioner was convicted of an illegal sale of narcotics to one "John Doe". The defendant *demanded* the identity of the alleged informer, and there was no indication that the defendant, at the time of trial, was aware of the identity of the informer. The government's refusal to disclose the identity was upheld by the trial court, but the Supreme Court ruled that this was prejudicial error. The same finding was reached in the earlier case of *Portomene v. United States*, 221 F. 2d 582 (5th Cir. 1955), in which the accused, who was charged with sales of narcotics to an informer, denied the sales, and testified that he believed the informer must have had a grudge against him. The Circuit Court of Appeals held that disclosure was essential. The accused had expressly requested the name of the informer, and there was nothing in the record to show that he already knew his name. See also *Crosby v. State*, 90 Ga. App. 63, 82 S. E. 2d 38 (1954); *People v. Lawrence*, 149 Cal. App. 2d 435, 308 P. 2d 821 (1957); *People v. Castiel*, 153 Cal. App. 2d 653, 315 P. 2d 79 (1957). And see also *Mitchell v. Superior Court*, 321 P. 2d 106 (Cal. App. 1958) and *Priestly v. Superior Court*, 319 P. 2d 796 (Cal. App. 1957). In the case now before us,

---

1. See the articles on the subject of informers in 60 Yale L. J. 1091 (1951), and 63 Yale L. J. 206 (1953).

the .defendant never requested the identity of the informer, and was, in fact, actually aware of his name.

If the accused knows the identity of the informer, or, if the name of the informer is not known to the accused, but he fails to make proper demand at the trial for a disclosure of the identity of the informer, there is no prejudicial error if the accused has had ample opportunity to summon or call the informer to the trial. The mere fact that the state failed to call the informer as a witness is not important. *Sorrentino v. United States,* 163 F. 2d 627 (9th Cir. 1947); *United States v. Conforti,* 200 F. 2d 365 (7th Cir. 1952). In the *Roviaro* case, *supra,* the Supreme Court said that "once the identity of the informer has been disclosed * * *, the privilege is no longer applicable." The same rule was applied in *Pihl v. Morris,* 319 Mass. 577, 66 N. E. 2d 804 (1946), and *Commonwealth v. Congdon,* 265 Mass. 166, 165 N. E. 467 (1928). *Accord, People v. Lazzara,* 131 Cal. App. 2d 663, 281 P. 2d 4 (1955). Also see 8 *Wigmore, Evidence* (3d ed. 1940), Sec. 2374(2); *McCormick, Evidence* (1954), Sec. 148.

In the *Sorrentino* case, *supra,* the accused was charged with both a sale and possession of narcotics. Agents of the government saw the accused go into a house with the informer after overhearing the bargaining for a sale, and the informer later turned over narcotics to the agents. The Court stated that, if the informer were nothing more than an informer, the defendant would not have been entitled to have the identity of the informer disclosed to him, but because the informer was something more than a mere informer—he was the person to whom the defendant was said to have sold and delivered the opium—the defendant was entitled to a disclosure of the informer's identity. But inasmuch as the record disclosed that the defendant knew the identity of the informer, the conviction was affirmed. In the *Conforti* case, *supra,* the accused was charged with the possession of counterfeit notes. Agents overheard the informer make arrangements with the accused, saw the informer meet the accused and a package transferred, and received from the informer the package which contained counterfeit money. The Court stated that

the defendant had a right to know the identity of the informer because he was more than an informer. However, the accused had never made a proper demand at the trial for a disclosure of the identity of the informer. Government witnesses were asked several questions about the informer, but at no point were they asked to reveal the name and address of the informer. Since the vital question had not been asked, the Circuit Court declined to reverse the District Court. In the recent case of *United States v. Colletti,* 245 F. 2d 781 (2d Cir. 1957), decided after the *Roviaro* case, the Court held that the government's failure to identify the so-called "special employee" with whom an agent had arranged for the purchase of heroin was of no consequence. There had been no demand for disclosure. Absent such demand the defendant had failed to show a denial of his rights.

In the case at bar the defendant admitted in his statement to the police lieutenant that he knew the informer. At the trial one of the police officers disclosed the name of the informer without any demand being made. As in the *Conforti* case, several other questions were asked about the informer —whether the informer was a dope addict—whether the informer had ever been arrested—whether the police officer knew where the informer was at the time—but at no time did the defendant ask for the identity of the informer, demand that the state call him as a witness, or request the state to explain his absence.

We think it is clear that there was sufficient evidence for the trial court to find the defendant guilty beyond a reasonable doubt even though the informer did not testify.

The answer to the defendant's second contention that he did not receive a fair and impartial trial is answered, at least in part, by our decision of his first contention. We are unable to find that the comments made by the trial court—either when the defendant was arraigned, or on the day of trial when his "petition" for removal was filed and heard—were improper or prejudicial. Moreover the trial of the defendant as a second offender was certainly not such as to deny the defendant a fair and impartial trial under the law and current procedure of this state. The appellant contends that the

averment of a prior conviction was prejudicial but as was stated in *Maguire v. State,* 47 Md. 485 (1878), the indictment must contain an averment of every fact essential to warrant the punishment which may be imposed. And in *Goeller v. State,* 119 Md. 61, 85 A. 954 (1912), this court held that it would be a violation of a defendant's constitutional rights to convict and sentence him as a second offender without informing him *in the indictment* that he was so charged. See also *Kenny v. State,* 121 Md. 120, 87 A. 1109 (1913); *Hall v. State,* 121 Md. 577, 89 A. 111 (1913), and *Beard v. State,* 216 Md. 302, 140 A. 2d 672 (1958). The case of *Seick v. State,* 94 Md. 71, 50 A. 436 (1901), cited by the defendant, is not in point. There the statute did not provide an increased penalty for a second offender, wherefore the court ruled that an indictment containing an averment of a prior conviction was prejudicial and improper.

The defendant argued earnestly that in cases, such as the one before us, in which a defendant is charged with a prior offense, this court should invoke the procedure laid down in *State v. Reilly,* 94 Conn. 698, 110 A. 550 (1920), and in *State v. Ferrone,* 96 Conn. 160, 113 A. 452 (1921), to the effect that separate issues should be presented to and tried by the trier of the facts separately: (i) the issue of the guilt or innocence of the crime charged, and (ii), if the verdict be guilty, then the issue of the *previous conviction* charged as an historical fact. If we assume, without deciding, that such procedure would be preferable to our present method of trying the facts in "prior offense" cases, it is clear that there is at present no such statute or rule in this state, and the practice to the contrary, at least, in jury cases, has been recognized ever since the decision in the *Maguire* case, *supra.*

The record shows that a general verdict of guilty was entered by the court sitting without a jury, and that a sentence of ten years—the maximum for a second offense—was imposed on the defendant.

We held in the *Beard* case, *supra,* that a stipulation in open court was sufficient to establish the fact of a prior conviction and that it would serve no useful purpose to require a specific finding thereon. We see no reason to make any distinc-

tion between the effect of the stipulation in the *Beard* case and of the admission made on the witness stand in the instant case. See *State v. Shepard,* 247 Iowa 258, 73 N. W. 2d 69 (1955) and *Annot.* 153 *A. L. R.* 1159 (1944). In view of this holding we need not consider here whether a distinction should be made between a case tried before the court and a jury and a case tried before the court alone with regard to the need for a specific finding of the fact of a prior conviction, and we therefore leave this question open.

*Judgment and sentence affirmed.*