578 A.2d 783

**Barry DeWayne BROOKS**

v.

**STATE of Maryland.**

**No. 160, Sept. Term, 1989.**

Court of Appeals of Maryland.

Sept. 6, 1990.

Motion for Reconsideration Denied
Oct. 9, 1990.

Gary S. Offutt, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief) Baltimore, for petitioner.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

MURPHY, Chief Judge.

At a jury trial in the Circuit Court for Anne Arundel County (Wolff, J.), Barry DeWayne Brooks was convicted of distribution of cocaine and sentenced to eighteen months' imprisonment. The Court of Special Appeals affirmed the judgment in an unreported opinion. We granted certiorari to determine whether, at a pretrial hearing, the court (Thieme, J.) erred in denying Brooks's motion to compel disclosure of the State's informer.

## I.

On March 4, 1988, Detectives Foote and Young of the Anne Arundel County Police Department were conducting an undercover operation in the Bywater community, a housing project in Annapolis. They drove into the area in an unmarked vehicle, accompanied by an informer, and bought cocaine from an individual while seated in their car. On

May 25, 1988, almost two months after the transaction, Brooks was arrested as the criminal agent and charged with distribution, possession with intent to distribute, and simple possession of cocaine.

Prior to trial, Brooks moved to compel disclosure of the informer. He proffered to show that he had been misidentified as the seller and that the informer was a crucial witness to negate any police testimony to the contrary. The State conceded that the informer was present throughout the transaction and that he introduced the seller to the detectives. It maintained, however, that the State's privilege to conceal the identity of informers was applicable because the informer was not an integral part of the transaction.

The court rejected Brooks's proffer and denied the motion. It ruled that disclosure is not required if the informer is a mere tipster so that, even if he accepted Brooks's proffer, "the only thing I've heard is that at most [the informer] was a tipster."

At trial, Detective Foote testified that, prior to March 4, 1988, he had "received numerous names" of individuals, including Brooks, who were suspected of dealing narcotics. He also testified that, on the day of the sale, Detective Young was driving the unmarked vehicle, the informer was sitting in the front passenger seat, and Detective Foote was sitting in the back seat, behind the informer. Detective Young stopped the vehicle so that the driver's side was next to the passenger's side of an already-parked white Chevrolet Nova. A tall, light-skinned black man was exiting the passenger side of the Nova. The informer knew him. Detective Young rolled down his window and the informer said, "Hey, Barry, can I holler at you for a minute?" The man came over to Detective Young's window and discussed with Young the type and quantity of narcotic he was seeking. The man thereafter said he would return. He walked towards the housing project and returned in five minutes, getting into the back seat of the car behind Detective Young and exchanging money for a package of what

later was tested to be cocaine. He told the detectives to come to a housing project in the Newtown area, near Bywater, if they wanted more cocaine. He then left the vehicle. According to Detective Foote, at no time did the seller stand next to the passenger's side of the unmarked car, where the informer was sitting.

Detective Young gave a substantially similar version of the transaction. However, contrary to Detective Foote's testimony, Detective Young said that it was the informer, not he, who initiated discussion about purchasing narcotics.

Neither detective had met Brooks before the day in question, and the police report written the day after the transaction only identified Brooks by height and weight. Detective Foote testified that he had seen Brooks on approximately four prior occasions, always in the Newtown area. He remembered seeing him once alone, twice in a crowd of mostly "dark-skinned, black males," and once driving a white Chevrolet.[1] On none of these occasions did Detective Foote approach him. The detective also testified that he had seen a photograph of Brooks prior to the day of the unlawful transaction, but that his identification of Brooks at trial was based on the transaction.

Detective Young testified that he had seen Brooks on about five occasions before March 4, 1988, but that he could not have described Brooks's weight or any identifying characteristics before the day of the transaction; he had known only that Brooks was a tall, light-skinned black man. Detective Young had run a check on the license plate of the Chevrolet that they had seen driven by an individual thought to be Brooks, and learned that Brooks owned the vehicle. The detective did not run a similar check on the license plate of the white Nova which was observed on March 4. The detective also saw the photograph of Brooks approximately two days after the transaction. Neither

---

[1]. Although not entirely clear from the transcript, this white Chevrolet apparently was not the white Chevrolet Nova from which the seller exited on March 4.

detective reexamined the photograph in the subsequent seven months before trial, and there was no evidence that they saw Brooks in person again during that time.

Brooks did not present any evidence. He noted in closing argument that neither detective, either at the time of the transaction or at trial, had commented on Brooks's facial scar or his two gold-trimmed teeth as assisting them in identifying him.

Before the Court of Special Appeals, Brooks argued that Judge Thieme committed reversible error when he denied the motion to compel disclosure of the informer's identity. He claimed that Judge Thieme mislabelled the informer a "tipster," and then failed to weigh Brooks's specific claim of misidentification against the State's interest in withholding the identity of the informer.

The Court of Special Appeals agreed that the informer was not a mere "tipster." It reasoned that the informer issue was "mid-point along a spectrum which is free of ambiguity at both ends." It held that, had the informer been a mere "tipster," his disclosure would not have been required. On the other hand, it said that had the informer been an active participant in the crime itself, his disclosure could be compelled. The court then held that, as a witness, the informer stood between the two categories and that, in those circumstances, the law entrusts the disclosure decision to the wide discretion of the judge at the pretrial hearing. The court concluded that Judge Thieme had fairly exercised his discretion in denying the motion. It also found that, in making the motion, Brooks was "involved either on a fishing expedition or an opportunity to make procedural mischief for future appellate purposes." In so holding, the intermediate appellate court determined that Judge Thieme's decision not to compel disclosure of the informer's identity was fortified by the fact that the two officers had seen Brooks on three or four previous occasions, had seen his vehicle, and had identified his photograph.

## II.

■ The State's privilege to withhold from disclosure the identity of its informers has long been recognized, not only in Maryland, *Drouin v. State*, 222 Md. 271, 279, 160 A.2d 85 (1960), but throughout the country. *McCray v. Illinois*, 386 U.S. 300, 308, 87 S.Ct. 1056, 1061, 18 L.Ed.2d 62 (1967). The purpose of the privilege is to further and protect the public interest in effective law enforcement. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957).

> " 'Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed.... Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship.' "

*McCray*, 386 U.S. at 308–09, 87 S.Ct. at 1061 (quoting 8 J. Wigmore, *Evidence* § 2374 (McNaughton rev. 1961)). The informer's privilege is especially important " 'in the enforcement of ... narcotics laws, [since] it is all but impossible to obtain evidence for prosecution save by the use of decoys. There are rarely complaining witnesses.' " *Lewis v. United States*, 385 U.S. 206, 210–11, n. 6, 87 S.Ct. 424, 427 n. 6, 17 L.Ed.2d 312 (1966) (quoting Model Penal Code § 2.10, comment, p. 16 (Tent. Draft No. 9, 1959)). *Accord McCray*, 386 U.S. at 312, 87 S.Ct. at 1063.

■ While the State's interest in maintaining the anonymity of its informers is manifestly important, that interest is necessarily circumscribed by the defendant's interest in a fair trial. In this regard, the Supreme Court held in *Roviaro*, its seminal case on this issue, that the privilege is limited by fundamental fairness requirements when determining the guilt or innocence of the accused. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause,

the privilege must give way." 353 U.S. at 60–61, 77 S.Ct. at 627–628. This is the applicable standard when determining whether the State's privilege accedes to the defendant's constitutional rights of due process and confrontation. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 870, 102 S.Ct. 3440, 3448, 73 L.Ed.2d 1193 (1982). *See also* Md. Rule 4–263(c)(2).

In that same vein, the Court held that the privilege is limited to its underlying purpose. *Roviaro*, 353 U.S. at 60, 77 S.Ct. at 627. Thus, once the identity of the informer has been disclosed to those who would resent the communication, the privilege no longer applies if its purpose of protecting the anonymity of the informer is no longer served. *Id.*

*Roviaro* did not impose any absolute rule of when an informer's identity must be disclosed. *Id.* 353 U.S. at 62, 77 S.Ct. at 628. *See also McCray, supra*, 386 U.S. at 311, 87 S.Ct. at 1062. Instead, the Court required trial judges to balance the public interest in protecting the flow of information against the individual's right to prepare a defense. *Roviaro*, 353 U.S. at 62, 77 S.Ct. at 628. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* The Court suggested three defenses for which an informer's identity could be vital: entrapment, lack of knowledge of the contents of a package, and, as in this case, mistaken identity. *Id.* 353 U.S. at 64, 77 S.Ct. at 629.

In *Roviaro*, the informer and the accused were the sole participants in a drug transaction, the testifying police officers only listened to the transaction or watched it from afar, the accused did not know the informer, and the defense was entrapment. The Court, applying its balancing test, held that the informer's name should have been released. In so holding, it noted that the informer's "possible testimony was highly relevant and might have been helpful to the defense," *id.* 353 U.S. at 63–64, 77 S.Ct. at 629–630, in

part because he was the "only witness [other than the accused] in a position to amplify or contradict the testimony of government witnesses." *Id.* 353 U.S. at 64, 77 S.Ct. at 629.[2]

■ Relying on *Roviaro*, we interpreted the nondisclosure privilege to be inapplicable "whenever the informer was an integral part of the illegal transaction." *McCoy v. State,* 216 Md. 332, 337, 140 A.2d 689, *cert. denied sub nom., McCoy v. Pepersack,* 358 U.S. 853, 79 S.Ct. 82, 3 L.Ed.2d 87 (1958). We noted that "[t]he cases universally recognize the exception to the nondisclosure privilege where the informer was a participant, accessory or witness to the crime." *Gulick v. State,* 252 Md. 348, 354, 249 A.2d 702 (1969). Judge Orth, in *Nutter v. State,* 8 Md.App. 635, 639, 262 A.2d 80 (1970), clarified the disclosure requirement in regard to an informer who witnesses the unlawful transaction:

> " '[W]itness' as used in *Gulick* means a material witness, in the sense that his testimony is *important* to a fair determination of the cause. It is then that his identity becomes necessary and relevant to a fair defense. Thus in this context 'material' may be said to have a meaning more restrictive than its usual meaning. So, although an eyewitness to a crime is clearly a 'material' witness as that word is ordinarily used, if he is an informer, simply observing an illegal transaction but not participating in it, the fact that he observes the transaction does not necessarily make his possible testimony so important as to compel disclosure of his identity in the face of the rationale of the nondisclosure privilege." (Emphasis in original.)

---

**2.** *Roviaro* recognized, 353 U.S. at 64, 77 S.Ct. at 629, that the only other option was to require the accused to take the stand in his own defense, an option which severely impacted upon the accused's Fifth Amendment right not to testify.

The decision to compel disclosure of an informer is within the sound discretion of the trial court. *Gulick,* 252 Md. at 354, 249 A.2d 702.

▉ We have stressed that trial courts must apply the *Roviaro* balancing test in each case, regardless of the labels attached to the informer's role. *Gulick,* 252 Md. at 354, 249 A.2d 702; *Drouin, supra,* 222 Md. at 286, 160 A.2d 85. Clearly, the practical application of the balancing test is more rudimentary in some cases. For example, we recognize that the privilege ordinarily applies where the informer is a mere "tipster," who supplies a lead to law enforcement officers but is not present at the crime, while disclosure is usually required when the informer is a participant in the actual crime. *United States v. Brinkman,* 739 F.2d 977, 981 (4th Cir.1984); *Jones v. State,* 56 Md.App. 101, 110, 466 A.2d 895 (1983). Contrary to the view taken by the Court of Special Appeals in this case, the balancing test should be applied in all cases. As noted in *Nutter,* the key element is not the role of the informer, but the materiality of his testimony to the determination of the accused's guilt or innocence balanced against the State's interest in protecting the identity of the informer.

▉ We thus reject the State's contention that the nondisclosure privilege applies when an informer merely points out or introduces a defendant to an undercover officer and is only a witness to, not a participant in, the illegal transaction. Such a rule would ignore the required *Roviaro* balancing test. Indeed, virtually all the cases cited by the State in favor of this proposition applied the *Roviaro* test to the particular facts of the case before concluding that disclosure was not necessary.

A number of jurisdictions confronted with claimed misidentification cases similar to the instant case have balanced the State's interest in nondisclosure against the accused's interest in the informer's testimony and have found the latter interest to prevail. *State v. Blyther,* 287 S.C. 31, 336 S.E.2d 151 (Ct.App.1985), *cited with approval in State v.*

*Burney,* 294 S.C. 61, 362 S.E.2d 635 (1987) (disclosure required where informer introduced seller by different last name, and where police report written by testifying officer did not describe seller as having defendant's moustache or missing teeth, and did not accurately describe defendant's height); *State v. Wandix,* 590 S.W.2d 82 (Mo.1979), *cert. denied,* 445 U.S. 972, 100 S.Ct. 1665, 64 L.Ed.2d 248 (1980) (disclosure required even though informer introduced seller by defendant's name, because defendant had alibi and testifying officer had only seen defendant once before sale); *State v. Tuell,* 112 Ariz. 340, 541 P.2d 1142 (1975) (disclosure required where sale occurred in defendant's house because officer's description of defendant "Larry" more accurately described defendant's housemate "Gary"); *Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284 (1967) (disclosure required where testifying officers only knew defendant from sale in question). *See also United States v. Ayala,* 643 F.2d 244 (5th Cir.1981) (disclosure required where informer was present and both informer and testifying officer knew defendant only from sale in question); *Sims v. State,* 313 So.2d 27 (Miss.1975) (disclosure normally required where informers are present, since there is usually nothing secret, confidential or "undercover" about who they are).

Jurisdictions that have denied disclosure in mistaken identity cases have also relied on the *Roviaro* balancing test. *United States v. Soles,* 482 F.2d 105 (2d Cir.), *cert. denied,* 414 U.S. 1027, 94 S.Ct. 455, 38 L.Ed.2d 319 (1973) (privilege applied where it was highly unlikely that police officer who spent substantial periods of time with defendant making two drug transactions was mistaken as to defendant's identity); *State v. Milligan,* 71 N.J. 373, 365 A.2d 914 (1976) (privilege applied even though officer's description of defendant had minor mistakes where narcotic sale occurred in defendant's house and not on street).

In *People v. Goggins,* 34 N.Y.2d 163, 356 N.Y.S.2d 571, 313 N.E.2d 41, *cert. denied,* 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974), the New York Court of Appeals held in

two factually similar consolidated cases that disclosure was warranted in one case but not in the other. Both cases involved an informer introducing an undercover officer to a narcotics dealer who then sold narcotics to the officer on two separate occasions. In the first case, the sales were made in a public bar; in the second case, they were made in the defendant's apartment. The officer's opportunity to identify the defendant as the seller was better in the second case than in the first. These facts were pivotal in the court's holding that there was a colorable factual dispute on the issue of identity in the first case but not the second. *Goggins* demonstrates that "the truly crucial factor in every case is the relevance of the informer's testimony to the guilt or innocence of the accused," 356 N.Y.S.2d at 576, 313 N.E.2d at 45, and not the label attached to the informer's role.

### III.

■ The Court of Special Appeals erred when it held that Judge Thieme properly exercised his discretion when denying Brooks's motion to disclose the identity of the informer. As we see it, the trial judge erroneously labelled the informer a "tipster;" he then erred when he held that this determination, in effect, replaced his duty to balance Brooks's claim of misidentification against the State's interest in protecting the informer's identity. The intermediate appellate court seemingly ignored the possibility that Brooks requested the disclosure of the informer's identity because he truly was misidentified by the police as the seller, and was therefore not at the scene of the crime to know the informer's identity. In these circumstances, it is hardly beyond reason that the informer, who knew the seller, might exonerate him. The measure of that possibility is for the trial court to determine, applying the balancing test set forth in *Roviaro*, based on the record made at the pretrial hearing. In this regard, we note that the intermediate appellate court inappropriately relied on the prosecution testimony at trial to support Judge Thieme's denial of the motion to disclose.

As with pretrial suppression hearings, *see Trusty v. State*, 308 Md. 658, 670–71, 521 A.2d 749 (1987), the appellate court reviews only the record made at the pretrial motion to disclose, and not the record of the trial itself, in determining whether it was error to deny the motion.

We conclude, in the circumstances of this case, that Brooks must be afforded a new trial. Whether Brooks's motion to compel disclosure of the informer's identity should be granted upon retrial is governed by the principles set forth in this opinion.[3]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR A NEW TRIAL. COSTS IN THE COURT OF SPECIAL APPEALS AND IN THIS COURT TO BE PAID BY ANNE ARUNDEL COUNTY.

---

**3.** At the new hearing, Brooks must do more than merely speculate that disclosure will prove helpful. *United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir.1979); *United States v. Trejo–Zambrano*, 582 F.2d 460, 466 (9th Cir.), *cert. denied sub nom., Fierro–Soza v. United States*, 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978); *Jones, supra*, 56 Md.App. at 109, 466 A.2d 895. As the Court said in *Valenzuela–Bernal, supra*, 458 U.S. at 871, 102 S.Ct. at 3448, "[w]hile a defendant who has not had an opportunity to interview a witness may face a difficult task in making a showing of materiality, the task is not an impossible one." Nevertheless, the burden is on the defendant to assert a substantial reason indicating that the identity of the informer is material to his defense or the fair determination of the case. *Drouin, supra*, 222 Md. at 286, 160 A.2d 85.