713 A.2d 342

Anthony EDWARDS a/k/a Harold Brooks

v.

STATE of Maryland.

No. 94, Sept. Term, 1997.

Court of Appeals of Maryland.

July 17, 1998.

Margaret A. Mead (Roland Walker, Walker, Van Bavel, Amaral and Mead, P.A., on brief), Baltimore, for petitioner.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and MARVIN H. SMITH, Judge (retired, Specially Assigned).

WILNER, Judge.

Petitioner, Anthony Edwards (also known as Harold Brooks), was convicted in the Circuit Court for Baltimore City of possessing, with intent to distribute, more than 448 grams of cocaine, in violation of Maryland Code, Article 27, § 286(f)(1) (1996 Repl.Vol.). The conviction was based on evidence, presented through an agreed statement of facts, that, in the course of executing a search warrant for 2125 Cliftwood Avenue on the evening of May 17, 1995, police officers discovered petitioner alone in the basement in immediate proximity to nearly 1,000 grams of 89% to 93% pure cocaine base, having a street value of approximately $500,000. About half of the cocaine was in a large zip-lock bag sitting on a table, another quarter-kilo was in a sandwich bag, and the rest was in a tape box and on a triple-beam scale. On the table as well was $1,000 in 10 stacks of $100. Also found in the basement were a loaded .12–gauge shotgun and two loaded pistols. Additional weapons were discovered upstairs and in the car petitioner had driven to the house moments before the police entered to execute the warrant. Two women—one Imgene Reaves and a co-defendant, Sylvia Harris—were found in the living room.

For obvious reasons, petitioner does not challenge the sufficiency of the evidence underlying his conviction. His attack,

instead, is on the search warrant that led to the discovery of that evidence. We shall affirm.

### RELEVANT FACTS AND PROCEDURAL HISTORY

On May 16, 1995, Officers Frank Alston and Lawrence Gardner made application to Judge H. Gary Bass, of the District Court, for a warrant to search (1) the persons of "Nat," described as a black male, 20–25 years of age, 6 feet tall, 170 pounds, and "Silco," a black female, 40 years of age, and (2) the premises of 2125 Cliftwood Avenue. In their application, the officers stated that they had reason to believe that cocaine, narcotics paraphernalia, and other incriminatory objects and papers were then being concealed on those persons and in that property. In an accompanying affidavit, the officers attested first to their drug enforcement training and experience, which was extensive and undisputed. They then asserted that, during the first and second weeks of May, 1995, they had been informed by a registered confidential informant, identified only as NED # 465, that the informant knew of a dwelling "where currently there is a large quantity of cocaine being stored," that the informant "has seen cocaine and [sic] inside of 2125 Cliftwood Ave," and that the cocaine was being sold in large quantities by "Nat" and "Silko," the persons described in the application. The person identified as "Nat" drove a black Infiniti M–30 and a gray Mercedes and used those vehicles to transport and sell controlled dangerous substances. The informant stated that he/she knew that information to be true "because he/she has purchased CDS from this house and has observed the above listed CDS inside the dwelling."

> In further support of the application, the affidavit stated: "Prior to the signing of this warrant, on a date and time, that cannot be specific, as it might reveal the identity of the informant, your affiant brought NED # 465 to the chambers of the Honorable Judge Gary Bass who administered the oath under the penalty of perjury that what the affiants had been told by the informant, and that it was true and accurate. Judge Bass did this by having NED # 465 read

the information and promise that it was accurate and swear to its truthfulness. Judge Bass did not ask NED # 465 any information beyond the four corners of the affidavit."

Upon that application and affidavit, Judge Bass issued the search warrant, finding that there was probable cause to believe that controlled dangerous substances were being concealed on the described persons and at 2125 Cliftwood Avenue. On the application, Judge Bass wrote, in longhand, "I hereby find as a fact that the informant who swore under oath as to the accuracy of the information in the affidavit, and from whom I took no more information, is reliable." In the agreed statement of facts presented at petitioner's trial, it was established that the warrant was executed the next evening and that, immediately prior to executing the warrant, the officers observed petitioner drive up in a black Infiniti M–30, park the car in the rear of 2125 Cliftwood Avenue, exit the car, and enter the house through an open rear door.

In January, 1996, after having filed an earlier omnibus motion devoid of supporting facts but seeking a variety of relief, including the suppression of all evidence that may have been unlawfully seized, petitioner filed a motion for an *in camera* hearing to disclose and question the confidential informant referred to in the warrant affidavit and a separate motion for a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Each of the two latter motions was accompanied by an affidavit from petitioner. Both motions were based on petitioner's assertion that the confidential informant was one Kelly Brooks, that petitioner indeed had arranged to buy a kilogram of cocaine from Brooks for $11,000, that the cocaine was supposed to be delivered to petitioner on the evening of May 16 but that it was not, in fact, delivered until the afternoon or evening of May 17, and that, accordingly, Brooks could not have been telling the truth when he asserted that there was cocaine at 2125 Cliftwood Avenue on May 16.[1] In the affidavit support-

---

1. Kelly Brooks is no relation to petitioner.

ing his motion for a *Franks* hearing, though not in the affidavit filed with his motion for disclosure of the informant, petitioner averred:

> "The affidavit [in support of ·the application for search warrant] falsely states that drugs were currently in residence at the time the search warrant was obtained on May 16, 1995. I had no drugs in 2125 Cliftwood Avenue, and had not had any drugs in the house for several months prior. As explained in detail above, there were no drugs in the residence until May 17, 1995, the day the search warrant was actually executed."

Petitioner also averred that he had never sold any drugs to Brooks and that Brooks's statement to the contrary was also inaccurate.

The motions for disclosure of the informant and for a hearing pursuant to *Franks v. Delaware* were related. Indeed, notwithstanding his assertion that he knew the informant to be Kelly Brooks, petitioner asserted in his motion for disclosure that it was necessary for the State to produce the informant and make him available for questioning in order to determine whether a *Franks* hearing was warranted. At a hearing on the three motions, the State asserted, and offered to prove through the testimony of the two police officers, that Kelly Brooks was not the informant. That did not satisfy petitioner, who continued, on the one hand, to insist that Kelly Brooks was the only person with whom he was involved, and, on the other, that if Brooks was *not* the informant, it was equally critical that he be informed of who *was* the informant.

The trial court denied the three motions, largely because of the appearance of the informant before Judge Bass and the informant's attesting under oath to the truth of the statements attributed to him in the officers' affidavit. That appearance was viewed by the court as the equivalent of an *in camera* hearing, thereby obviating the need for it to conduct another one, as precluding the need for a *Franks* hearing, and as sufficiently establishing the reliability of the informant for purposes of assessing probable cause. The court regarded the

dispute before it as a "swearing contest," and, without any corroboration of petitioner's affidavit, there was, in the court's view, insufficient objective evidence that "the police engaged in a lie or engaged in reckless disregard for the truth with respect to how they responded to the informant's information...."

In affirming petitioner's conviction, the Court of Special Appeals took much the same view. On the issue of whether petitioner was entitled to an *in camera* disclosure of the informant, the appellate court discussed the balancing requirements of *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), *Warrick v. State*, 326 Md. 696, 607 A.2d 24 (1992), and *Brooks v. State*, 320 Md. 516, 578 A.2d 783 (1990), and concluded that, because the informant was essentially a "tipster" and because Judge Bass, in effect, held an *in camera* hearing, it was not necessary for the circuit court to hold another one or to require disclosure of the informant. A *Franks* hearing, it held, was required only when the accused makes a "substantial preliminary showing" that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included by an affiant in the warrant affidavit, and no such showing had been made by petitioner. His unsupported assertion that the informant, whether Kelly Brooks or someone else, lied was not enough. Finally, the court found no merit in petitioner's assertion that the application and affidavit failed to establish probable cause. We granted *certiorari* to consider the same three issues debated in the circuit court and the Court of Special Appeals.

### DISCUSSION

As a preface, we cannot help but note a certain anomaly in petitioner's argument. In his own pre-trial affidavits, petitioner admitted having made an arrangement with Kelly Brooks to purchase, for $11,000, the 1,000 grams of cocaine discovered in the basement of 2125 Cliftwood Avenue and upon which his conviction ultimately rested. He admitted that the cocaine was due to be delivered to him at 2125 Cliftwood Avenue on the evening of May 16 and that it was only because of an

unexpected delay on Brooks's part that the cocaine was not delivered until May 17. This is not a case, in other words, of an alleged mistaken identity, of a police entrapment, or even of a fortuitous find on the part of the police; petitioner himself verified that he expected to be in possession of a substantial amount of cocaine on May 16 C the day the warrant was applied for and issued. Petitioner's real complaint centers on one day's timing. His argument is that Mr. Brooks was the informant who "set him up," by falsely asserting that the cocaine was at the Cliftwood Avenue house on May 16—the day it was supposed to be delivered—when he knew that it would not, in fact, be delivered until May 17. The legal issues arising from the circumstances under which the warrant was issued are still presented, and will be addressed, but the framework for their consideration is hardly a sympathetic one for petitioner.

### *Disclosure of the Informant*

The modern law governing the circumstances in which the State must disclose the identity of a confidential informant derives largely from three principles enunciated in *Roviaro v. United States, supra,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. The first principle was a reaffirmation of the well-established common law privilege possessed by the Government "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law" *Id.* at 59, 77 S.Ct. at 627, 1 L.Ed.2d at 644. That privilege, the Court said, is designed to encourage citizens to communicate their knowledge of criminal activity to law enforcement officials by preserving their anonymity and thus has as its purpose "the furtherance and protection of the public interest in effective law enforcement." *Id.* The second principle announced in *Roviaro* was that the privilege of nondisclosure is limited by its underlying purpose and is further constrained by "fundamental requirements of fairness." Thus, the Court held, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair

determination of a cause, the privilege must give way." *Id.* at 60–61, 77 S.Ct. at 628, 1 L.Ed.2d at 645. Integration of those two principles produced the third—the requirement that, when presented with a defendant's demand for disclosure, courts must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." Whether the balance requires disclosure, the Court added, "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 77 S.Ct. at 629, 1 L.Ed.2d at 646.

Those principles were established "[i]n the exercise of [the Supreme Court's] supervisory jurisdiction" to "defin[e] the scope to be accorded to the various common law evidentiary privileges in the trial of federal criminal cases," and not as a Constitutional adjudication. *McCray v. Illinois,* 386 U.S. 300, 309, 87 S.Ct. 1056, 1061, 18 L.Ed.2d 62, 69 (1967).[2] They have, however, been adopted as part of Maryland common law. *Drouin v. State,* 222 Md. 271, 160 A.2d 85 (1960); *Brooks v. State, supra,* 320 Md. 516, 578 A.2d 783; *Warrick v. State, supra,* 326 Md. 696, 607 A.2d 24. The privilege continues to be recognized, along with the articulated limitations and the required balancing process. *Brooks, supra,* 320 Md. 516, 578 A.2d 783. It is certainly evident here, beyond cavil, that the circuit court engaged in the requisite balancing process; it listened patiently to the arguments made on petitioner's behalf and gave careful consideration to all of the reasons he asserted in favor of disclosure. The question at this point is whether the court reached the right balance among the competing interests. Because the ultimate decision, assuming the application of correct principles of law in the balancing pro-

---

2. That is not to say, of course, that the required balancing process does not have Constitutional overtones, for it surely does. The limit on the common law privilege of non-disclosure arises from the right of a defendant to a fair trial, and that right is implicit in the Sixth and Fourteenth Amendments to the United States Constitution and in Article 21 of the Maryland Declaration of Rights.

cess, is a discretionary one with the trial court (*Gulick v. State,* 252 Md. 348, 354, 249 A.2d 702, 706 (1969); *Brooks v. State, supra,* 320 Md. at 525, 578 A.2d at 787), we look to see whether the court applied correct legal principles and, if so, whether its ruling constituted a fair exercise of its discretion.

■ The principal caveat to the privilege of non-disclosure articulated in *Roviaro* is that disclosure is required when the disclosure is relevant and helpful to the defense or is essential to a fair determination of the cause. That caveat has been interpreted, explained, and applied in a number of ways, but, as is the case with many judicial pronouncements, one must always keep in mind the context in which the pronouncement is uttered. Many courts, including this Court, have described the balancing process as hinging on "the materiality of the informer's testimony to the determination of the accused's guilt." *Warrick, supra,* 326 Md. at 701, 607 A.2d at 27. In that regard, courts have (1) drawn a distinction between an informant who actually participated in the criminal activity with which the defendant is charged, who may, as a result, have direct knowledge of what occurred and of the defendant's criminal agency, and who therefore may be a critical witness with respect to the defendant's guilt or innocence, on the one hand, and, on the other, an informant who is a mere "tipster"—a person who did nothing more than supply information to a law enforcement officer, who did not participate in the criminal activity and may not even have been present when it occurred, and who has little or no direct knowledge of the defendant's guilt or innocence, and (2) tended to require disclosure in the first situation but not in the second.

*Roviaro* and *McCray* are examples. In *Roviaro,* the informant "had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged," *Roviaro, supra,* 353 U.S. at 55, 77 S.Ct. at 625, 1 L.Ed.2d at 640, and thus, because the identity and possible testimony of the informant bore directly

on the defendant's guilt or innocence, especially in light of his defense of entrapment, the Court held that non-disclosure constituted reversible error. In *McCray*, the informant merely apprised the officers that the defendant was selling drugs on a certain corner. The officers, one of whom was familiar with the defendant, drove to that corner and observed the defendant engaging in conduct that appeared to indicate drug trafficking. The defendant was arrested, searched, and found to be in possession of heroin. Distinguishing *Roviaro*, the *McCray* Court declined to overturn, on Constitutional grounds, a State common law rule not requiring police officers to disclose the identity of an informant "if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant." *McCray, supra*, 386 U.S. at 305, 87 S.Ct. at 1059, 18 L.Ed.2d at 67.

This Court has also recognized that distinction. In both *Brooks* and *Warrick*, we noted "that the privilege ordinarily applies where the informer is a mere 'tipster,' who supplies a lead to law enforcement officers but is not present at the crime, while disclosure is usually required when the informer is a participant in the actual crime." *Brooks, supra*, 320 Md. at 525, 578 A.2d at 787; *Warrick, supra*, 326 Md. at 701, 607 A.2d at 26, both citing *United States v. Brinkman*, 739 F.2d 977, 981 (4th Cir.1984) and *Jones v. State*, 56 Md.App. 101, 110, 466 A.2d 895, 899 (1983). *See also Jones v. State*, 105 Md.App. 257, 659 A.2d 361 (1995).

If that were the only relevant and applicable distinction, petitioner's argument would be easily answered. The informant's identity and testimony in this case would have been of little relevance to petitioner's guilt or innocence. As noted, his conviction rested entirely on the drugs and paraphernalia found in the basement of 2125 Cliftwood Avenue, drugs that petitioner admitted he had purchased that very day. The evidence came from an agreed statement of facts. There was no defense of mistaken identity, or entrapment, or lack of knowledge on petitioner's part that the cocaine was present in

the basement. No facts bearing on petitioner's guilt were even in dispute. The informant's identity was entirely irrelevant in that context; his or her testimony would have been of no assistance to petitioner.

The distinction articulated in *Brooks* and *Warrick* has to be viewed in the context of the facts presented in those cases, however. *Brooks* and *Warrick* had four important facts in common: the conviction rested on drug sales to undercover police officers; the informant was with the officers when they first encountered the person who sold the drugs and was therefore in a position to identify that person; the defendant was not arrested immediately but some time later; and his defense was mistaken identity. In each case, he sought the identity of the informant in order to be able to contradict the officers' identification testimony. In *Brooks*, we held that non-disclosure was error and reversed; in *Warrick*, we held that the court erred in failing to engage in the balancing process, and we remanded for that to occur.

The distinction articulated in *Brooks* and *Warrick* was appropriate to the issue presented in those cases, but it is clear from other cases, in Maryland and elsewhere, that the competing considerations are not limited to that context. The more difficult problem arises when, as here, the informant was not a direct participant in or witness to the criminal activity, but rather supplied material information in support of the probable cause used to obtain a warrant or to justify a warrantless arrest or search. The relevance of the informant's identity in that context arises, of course, from the exclusionary rule, rendering inadmissible evidence obtained in violation of the Fourth Amendment, and, notwithstanding that the informant's role was predominantly as a "tipster," disclosure may, in some instances, be required. The participant/tipster distinction is not necessarily controlling.

The *McCray* Court made clear that the Court was unwilling "to impose any absolute rule requiring disclosure of an informer's identity," especially "where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake."

*McCray, supra,* 386 U.S. at 311, 87 S.Ct. at 1062, 18 L.Ed.2d at 70. It confirmed earlier rulings that the police need not disclose an informer's identity when applying for an arrest or search warrant and made clear as well, notwithstanding *dictum* in *Roviaro* that had led some Federal courts to conclude otherwise, that disclosure was not necessarily required in non-warrant cases. The essence of *McCray,* drawn to some extent from its extensive quotation from *State v. Burnett,* 42 N.J. 377, 201 A.2d 39, 45 (1964), seems to be that, when the informant's role was limited to supplying information used by the police to establish probable cause, whether to require disclosure rests largely within the discretion of the judge who hears the motion to suppress. *McCray, supra,* 386 U.S. at 308, 87 S.Ct. at 1061, 18 L.Ed.2d at 68. Unfortunately, as Professor LaFave points out, the Court articulated no standards to guide the judge's discretion or, indeed, appellate review of the exercise of that discretion, leading a number of courts to uphold non-disclosure in those situations almost summarily, with little or no discussion. *See* WAYNE R. LAFAVE, SEARCH AND SEIZURE, 3.3(g) at 192–93 (3d ed.1996).

It is entirely consistent with *Roviaro* and *McCray,* and with Maryland case law, for a court to strike the balance in favor of non-disclosure when the informant's role was limited to providing information to establish probable cause and the existence of probable cause is not a significant issue in the case. In that setting, the informant's testimony would not be essential to a fair determination of the case and may not even be relevant to the accused's defense. When the defense *does* rest on a showing that critical evidence was obtained in the absence of probable cause, however, and the determination of that issue depends principally on the reliability of an informant or the veracity of an affiant's assertions of what an informant said or did, the balance may have to be struck in favor of disclosure. We made that clear in *Drouin v. State,* 222 Md. 271, 286, 160 A.2d 85, 92–93 (1960):

> "We think the reasonable and proper rule after a careful consideration of all of the authorities, to be that in criminal cases where the probable cause for a defendant's arrest

depends wholly, or in part, on information received from a non-participating informer, if the name of the informer is useful evidence to vindicate the innocence of the accused, lessens the risk of false testimony *or is essential to a proper disposition of the case,* disclosure should be compelled, or the evidence obtained by reason of the arrest and search suppressed.... If the accused asserts any substantial ground indicating that the identity of the informer is material to his defense *or the fair determination of the case on the issue of probable cause* the trial court should require the informant's name to be given (or the evidence suppressed) so that the informant may be summoned and interrogated if it be necessary to do so in order to determine whether or not the officer had probable cause to make the arrest."

(Emphasis added.)

■ A number of courts, when presented with a demand for disclosure of an informant supplying information used to establish probable cause, have based their rulings on the extent to which the finding of probable cause rested on the informant's uncorroborated information. The U.S. Court of Appeals for the Second Circuit, for example, has adopted the view that an informant must be produced only when his story constitutes " 'the essence or core or main bulk' of the evidence brought forth which would otherwise establish probable cause." *United States v. Tucker,* 380 F.2d 206, 212 (2d Cir.1967); *Mapp v. Warden, N.Y. State Corr. Inst., Etc.,* 531 F.2d 1167, 1173 (2d Cir.1976). In *Mapp,* the court held that disclosure was not required, because "[t]hough the informant's statements were a major factor in the finding of probable cause, there was substantial independent evidence which corroborated key elements of the tip." *Id.* at 1173. In a close case, or where the record is otherwise insufficient to permit the court to engage in the required balancing process, an *in camera* hearing may be necessary, to allow the court to interview the informant, determine what his or her role was in the matter, and reach an informed judgment as to whether the

informant's identity should be disclosed. We approved that approach in *Warrick, supra,* at 708-09, 607 A.2d at 30.[3]

■ This case falls within the category that ordinarily might call for an *in camera* hearing. The case against petitioner was based almost entirely on the evidence found at 2125 Cliftwood Avenue; the admissibility of that evidence, however, hinged on the validity of the warrant; and the validity of the warrant depended almost entirely on the credibility of the unnamed informant. The veracity of the informant's assertions, as stated in the officers' affidavit, thus became the crucial issue in the case. In the particular circumstances in which that issue was presented, however, an *in camera* hearing became unnecessary.

Until the State denied the allegation, petitioner's demand for disclosure rested foursquare on his assertion that the informant was Kelly Brooks. In effect, if not in articulation, petitioner viewed the warrant as an anticipatory one, applied for and issued on the expectation that Brooks would deliver the cocaine prior to execution of the warrant. The essence of his argument was that Brooks knew that the cocaine was not at the Cliftwood Avenue property on May 16 and that the two officers either also knew that to be the case or acted in

---

**3.** Although in *Warrick* the informant was allegedly a witness to the crime itself, *in camera* hearings are not reserved only for that circumstance. *See United States v. Moralez,* 908 F.2d 565 (10th Cir.1990), cited in *Warrick* at 710, 607 A.2d 24. LaFave notes that the fair trial issue often involves defense allegations of police perjury, which may go to the establishment of probable cause and are not always frivolous, and points out the problems in trying to fashion a workable standard for giving "due weight to the conflicting concerns of informant anonymity and police perjury." What is needed, he urges, is a rule " 'requiring a quantum of evidence small enough to be realistic in light of defendant's ignorance and yet substantial enough to rise above the general possibility of perjured testimony.' " WAYNE R. LAFAVE, *supra,* § 3.3(g) at 195, quoting from *The Supreme Court, 1966 Term,* 81 Harv. L.Rev. 110, 199 (1967). An *in camera* hearing, he suggests, is the device best suited to convert such a standard into reality, to ensure that "the Government can be protected from any significant, unnecessary impairment of necessary secrecy, yet the defendant can be saved from what could be serious police misconduct." *Id.* at 200, quoting from *United States v. Moore,* 522 F.2d 1068 (9th Cir.1975).

reckless disregard of whether the cocaine was then present. The sole basis for petitioner's hypothesis was his uncorroborated statement that there were no drugs at 2125 Cliftwood Avenue prior to May 17.

There are two problems with that argument. The first lies in his linchpin assumption that Brooks was the informant which, though perhaps a permissible inference was by no means a compelled one. As noted, the State offered to produce testimony from the two officers that Brooks was not the informant, but petitioner never called upon the State to produce that evidence, insisting instead that his word that Brooks was the informant must be accepted. That response spared the court the opportunity to judge for itself the credibility of the two officers, which we think is significant. If the officers had testified as proffered and the court found their testimony to be credible, there would clearly have been no need to produce the informant; only if the court found their testimony suspicious or unworthy of belief would a solid basis for an *in camera* hearing have been presented.[4] Calling upon the officers to testify could, in other words, have served the same legitimate purpose as an *in camera* disclosure, of testing the credibility of the affiants. Under the circumstances, the court was not required to do more.

The second flaw arises from petitioner's assumption that the drugs referred to in the officers' affidavit were those that petitioner had arranged to purchase from Brooks. For one thing, the affidavit is not so cast; it does not refer to drugs anticipated to arrive, but recounts drugs being sold from the premises in the recent past. In his own affidavit, petitioner

---

4. The basis for petitioner's insistence that disclosure was necessary even if Brooks was not the informant is unclear. His response to the State's offer was simply his assertion that "there was no other human being with whom he had involvement of any kind during any of the relevant time frames or places," an assertion, we note, which is made suspect by the presence in the home of his co-defendant, Ms. Harris, and the other woman, Ms. Reaves. In effect, his argument was that, even if the informant was not Brooks, he needed to know who it was because it must have been Brooks. The rationality of that argument escapes us.

swore that he had never sold drugs to Brooks and implied that Brooks had not been to the Cliftwood Avenue property, thereby either confirming that Brooks was not the informant or contesting that drugs had been sold to anyone from the Cliftwood Avenue property. In either case, no basis for a compelled *in camera* disclosure was stated. The informant appeared before Judge Bass and made oath that the statements attributed to him/her in the officers' affidavit were true. Judge Bass recorded his conclusion that the informant was credible. If the informant was Brooks, that simply meant that the judge believed that Brooks *had* purchased drugs from the Cliftwood Avenue property in the past two weeks, as, under the circumstances, he had a right to do. Petitioner's uncorroborated denial of that assertion does not, without more, tip the balance in favor of mandated disclosure.

Accordingly, for all of those reasons, we find no legal error and no abuse of discretion in the denial of petitioner's motion for disclosure of the informant.

### *Franks Hearing*

As noted, petitioner's motion for a *Franks v. Delaware* hearing was closely related to his request for disclosure of the informant, and, indeed, both motions were based on his claim that Kelly Brooks was the informant and that the drugs referred to in the affidavit were those actually delivered on May 17. Largely for the reasons stated in connection with the disclosure motion, we find no error in denying a *Franks* hearing.

■■ The Supreme Court held in *Franks* that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks, supra,* 438 U.S. at 155–56, 98 S.Ct. at 2676, 57 L.Ed.2d at 672. False statements deliberately or recklessly

made must be discarded, and if the affidavit, absent that false material, is insufficient to establish probable cause, the warrant must be voided. *Id.* at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682. Affidavits supporting applications for a search warrant are presumptively valid, however, and to mandate a hearing under *Franks* the attack "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* The requirement that the defendant make a "substantial preliminary showing" is not mere verbiage.

■ Petitioner made no such showing in this case. His assertion that the information contained in the affidavit was knowingly false rested entirely on his assumption that Kelly Brooks was the informant and thus the source of the information. His argument that the affiant officers necessarily knew that Brooks's information was false is wholly conclusory, devoid of supporting facts. It is bolstered to some extent by the fact that the informant also became an affiant, but whatever boost that gives to his position is more than outweighed by the fact that Judge Bass expressly found the informant to be credible. Although the *ex parte* appearance of an informant before a warrant-issuing judge is not the equivalent of a *Franks* hearing—there being no opportunity in such an appearance for cross-examination or the presentation of contradicting evidence—it is nonetheless an important factor in weighing whether a *Franks* hearing is necessary. As the Court of Special Appeals pointed out in *Tamburello v. State*, 67 Md.App. 180, 187–88, 506 A.2d 1202, 1206 (1986), "to the extent that the affidavit relies in any significant way on the otherwise hearsay statements of a confidential informant, appearance of the informant before the judge and his/her confirmation of those statements under oath is a welcome thing; it addresses directly and helps measurably to alleviate the concerns about reliance on the hearsay statements of such informants expressed in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)." Judge Bass, having the sworn testimony of the informant before him,

concluded that those statements were not false, deliberately or otherwise. Apart from petitioner's uncorroborated, conclusory assertions, there is nothing in this record to indicate that Judge Bass's conclusions were not accurate, and thus there is no basis for requiring a *Franks* hearing.

### *Probable Cause*

The last question posed by petitioner need not detain us long. The affidavit, corroborated by the sworn testimony of the informant, supplied more than sufficient probable cause to believe that cocaine was being stored in and sold from 2125 Cliftwood Avenue.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.

CHASANOW, J., concurs in the result only.