CLARENCE ROLLINS, JR. *v.* STATE OF MARYLAND

[No. 72, September Term, 1968.]

496

*Decided December 4, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Morris Lee Kaplan* (*Michael Lee Kaplan* on brief) for appellant.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *James B. Dudley, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

Clarence Rollins, Jr., the appellant, was convicted of violation of the narcotics laws and of being a subsequent offender under an addendum thereto. Both charges were tried together by agreement between the parties. The trial was conducted by Judge Anselm Sodaro presiding without a jury in the Criminal Court of Baltimore. The sentence imposed was a term of fifteen years.

There was evidence from which the trial judge could have found:

On November 9, 1966, a Federal Narcotics Agent, Vincent Lozowicki, met an unnamed informant who advised him that Rollins was going to make a delivery of approximately 60 capsules of heroin at Ramsey and Barre Streets in Baltimore City at approximately 10:00 p.m. the same night. The informant was known to the officer and for five years had been furnishing him with information which led to the arrest and conviction of about thirty narcotics offenders. The officer also knew Rollins had been a prior offender on at least two occasions.

As a result of this information Rollins' home was placed under surveillance by federal and city officers. About 9:40 p.m. Rollins came out of the house in the company of another man, and both entered a 1967 green and black Thunderbird. Rollins, the driver, was identified by one of the officers.

The officers conducting the surveillance followed in their vehicle while other officers with whom they were in radio contact, also proceeded to the area of Ramsey and Barre Streets. When Rollins' automobile reached the intersection of Ramsey and Barre Streets, it turned from Ramsey Street partially into Barre Street and stopped at the curb with most of the car resting in the bed of Barre Street. The passenger got out of the car and the car door was still open when the surveillance officers pulled across the path of Rollins' Thunderbird, and both officers got out. One of the officers held up his badge in his hand and yelled "Police" to Rollins. The other officers pulled up behind Rollins' car.

One officer observed Rollins toss an aluminum package out of the car. A second officer also observed the package come out of the car at a time when Rollins was the only person therein. The second officer picked up the package which contained 59 white gelatin capsules. The contents of the capsules were later analyzed and found to be heroin hydrochloride.

Rollins fled the scene in his automobile striking one of the two police vehicles that had converged to block his departure. At his trial Rollins denied that he threw the package from the car and produced a third police officer who said that, although he was present, he did not actually see the package fall to the street, but that he did see the second officer pick it up. The third

officer was arresting the passenger at the time the package was thrown.

On appeal Rollins contends that there was error in the denial by the trial judge of his pretrial motion for discovery requesting the name of the informant. He relies on *Roviaro v. United States,* 353 U. S. 53, 77 S. Ct. 623, 1 L.Ed.2d 639 wherein the Supreme Court held that where the question is one of guilt or innocence of the accused, and the need of such information is demonstrated, the accused is entitled to know the name of the informer. However, in *McCray v. Illinois,* 386 U. S. 300, 87 S. Ct. 1056, 18 L.Ed.2d 62 the Supreme Court distinguished between the need to produce such information as to a question of guilt or innocence, and the need to produce such information where the question involved is probable cause for the arrest. In the present case the informer's information related only to the probable cause for the arrest and *Roviaro v. United States, supra* is not on point.

Rollins further contends the arrest was illegal in that it was made without probable cause, and, therefore, that his motion to suppress the heroin should have been granted. Assuming, without deciding, that Rollins was arrested at the time when his car was almost surrounded by police cars, and assuming that his act in throwing the heroin to the street did not constitute an abandonment, we have no problem in holding the arrest was legal. The evidence showed that an informer, who had been furnishing reliable information for a period of five years, advised the police officers that Rollins, by name, would at 10:00 p.m., deliver approximately sixty capsules of heroin at Ramsey and Barre Streets. At the moment the officers stopped Rollins' vehicle they knew that Rollins had left his home at 9:40 p.m., had driven directly to the spot where the informer told him he would be, and that he was at that location at the exact time the informer had stated. We think that they had reasonable grounds to believe that he also had the heroin.

We think the present case is as nearly parallel to *Draper v. United State,* 358 U. S. 307, 79 S. Ct. 329, 3 L.Ed.2d 327 as it is possible for two cases to be. Note particularly 358 U. S. at 313, 79 S. Ct. at 333:

"Nor can we agree with petitioner's second contention that Marsh's information was insufficient to show probable cause and reasonable grounds to believe that petitioner had violated or was violating the narcotic laws and to justify his arrest without a warrant. The information given to narcotic agent Marsh by 'special employee' Hereford may have been hearsay to Marsh, but coming from one employed for that purpose and whose information had always been found accurate and reliable, it is clear that Marsh would have been derelict in his duties had he not pursued it. And when, in pursuing that information, he saw a man, having the exact physical attributes and wearing the precise clothing and carrying the tan zipper bag that Hereford had described, alight from one of the very trains from the very place stated by Hereford and start to walk at a 'fast' pace toward the station exit, Marsh had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. *And surely, with every other bit of Hereford's information being this personally verified, Marsh had 'reasonable grounds' to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true.*" (Italics added)

While the present record would have better developed if the officers had stated on the witness stand the exact information that they received from the informer, their subsequent observations verified what the informer had told them as to the time and place of the delivery and the name of the person who was to make the delivery. We certainly cannot say that the trial judge was clearly erroneous under Maryland Rule 1086 when he found the police officers had probable cause at that time to believe Rollins was in possession and control of narcotics and was thus committing a felony in their presence.

Finally, Rollins contends that the evidence was insufficient to support the verdict of the trial judge and that he was clearly

erroneous in his findings. The chemist examination of the material showing that it was heroin hydrochloride was admitted by stipulation. Two police officers each gave testimony sufficient to show that Rollins had been in possession of the package containing the heroin. No more is required. In making the contention, Rollins points to three minor matters in the testimony to support his position. He points to the testimony of the one police officer who did not see Rollins throw the package. This does not help him because two other police officers did see him throw the package. He further points to testimony in the record which shows that one of the police officers stated that he knew that the passenger had possession of the package. The reading of the testimony indicates clearly, however, that this was either a typographical error in the transcript or a slip of the tongue by the officer because his entire testimony shows clearly that Rollins had thrown the heroin from the car. He further contends that a police officer changed his testimony from what he gave at the preliminary hearing, but the record fails to disclose such discrepancy, and in any event it concerned only a minor detail in the testimony relating to distance.

*Judgment affirmed.*
*Appellant to pay the costs.*