# GULICK *v.* STATE OF MARYLAND

[No. 71, September Term, 1968.]

*Decided February 7, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, FINAN, SINGLEY and SMITH, JJ.

*Robert C. Heeney,* with whom were *Heeney, McAuliffe & McAuliffe, David L. Cahoon, County Attorney,* and *Stanley D. Abrams, Assistant County Attorney,* on the brief, for appellant.

*Joseph Zitomer, Special Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

This is an appeal from a finding by the lower court that Marvin R. Gulick (appellant), a detective sergeant in the Montgomery County Police Department, was guilty of contempt for refusing to obey its order to divulge the name of an informant who had given him information in the course of his investigation of a murder case.

On January 29, 1968, in the trial of *State of Maryland v. William Clifton Offord, Jr.,* criminal #8819, in the Circuit Court for Montgomery County, Maryland, the State called Sergeant

Gulick as a witness. On cross-examination, the defense counsel asked Sergeant Gulick if he remembered testifying before the Grand Jury on June 5, 1967, in connection with the subject criminal case. The Sergeant answered in the affirmative and the defense counsel proceeded to read to him his testimony which was in effect that one of his informants had seen the alleged murder weapon, a knife, and had told him that it looked like one belonging to Charles Ralph Offord, brother of the accused. Defense counsel then asked Sergeant Gulick the name of the informant who had said the knife was similar to the one with which he had seen Charles Ralph Offord playing. The State objected strenuously to this question, the response to which would have revealed the name of the informant.

There followed extensive argument on both sides relating to the general privilege not to disclose the informant's identity. The defense counsel urged the importance of his establishing that the knife belonged to Charles Ralph Offord and not the accused.[1] During these arguments the State offered to stipulate that the knife belonged to Charles Ralph Offord, brother of the accused, and furthermore, that the informant could testify to that and no more. This was not acceptable to the defense counsel who insisted upon knowing the name of the informant, stating that he might want to question him on the witness stand. The State requested that the lower court take the informant's testimony outside the presence of the jury for the purpose of determining whether his testimony would be of value to the defense, which the lower court refused to do. The State also emphatically informed the lower court, that to reveal the informant's name would place his life in jeopardy and would also set a precedent which would seriously handicap law enforcement officers in the area, insofar as obtaining any assistance from informers was concerned.[2] The lower court over-

---

1. It should be noted that although the State attempted to introduce the knife into evidence as the murder weapon, it had not been admitted into evidence by the court at the time Sergeant Gulick was cross-examined by the defense. Furthermore, the State was agreeable to the court's instructing the jury that the knife was not a part of the evidence.

2. It is interesting to note that the privilege of nondisclosure of

ruled the State's objection to defense counsel's request that Sergeant Gulick reveal the informant's name and ordered him to make the disclosure. The Sergeant declined to name the informant, stating, he also feared for the informant's personal safety. The lower court repeated the order and indicated that it had heard the argument on the point of privilege and had overruled the objections. The lower court felt that it was within its discretion to order disclosure of the informant's identity and the Sergeant was directed to answer the pending question. He again refused to do so. The lower court then took a ten minute recess and upon its return, Sergeant Gulick was served with a show cause order as to why he should not be held in contempt. At that point he made a request that he be represented by counsel; his attorney entered an appearance and the hearing on the contempt citation was set for January 31, 1968, two days after the citation.

The trial of William Clifton Offord, Jr. was continued on January 30, 1968, at which time his defense counsel moved for a mistrial on the grounds that the publicity which had been given to Sergeant Gulick's refusal to name the informant was prejudicial to the defendant's case. The lower court inquired of the jury whether they had read newspaper accounts of the events of the previous day which had taken place out of their presence. There was one affirmative response. One member of the jury also indicated that a statement by the President of the Montgomery County Council concerning the case would influence his verdict. The lower court thereupon declared a mistrial.

In the contempt proceeding, the following day, Sergeant Gulick filed an affidavit which indicated that the informant did not observe the homicide, did not participate in it in any form, nor did he obtain, or enable the police to obtain, any physical evidence.

The lower court took judicial notice of the proceedings in *State v. William Clifton Offord, Jr.,* criminal # 8819, out of

the identity of the informer is grounded on public policy for protection of the public interest in obtaining a flow of information and not for the protection of the informer. 97 C.J.S. Witness § 274, c.

which the contempt proceeding arose and *State v. Charles Ralph Offord,* criminal #8626, and the minutes of the testimony before the Grand Jury in criminal #8626.

At the hearing on the contempt citation, Sergeant Gulick, the appellant, was called to testify and stated that the informant gave him information about the knife to the effect that it was already in the possession of the police, having been turned over to an officer by a person whose motor vehicle had been parked near a home which had been visited by both Offord brothers the night of the crime. Sometime thereafter the knife dropped from the sunvisor of the individual's car. As a result of this, the appellant was able to learn that an officer did indeed have the knife but had failed to connect it with the murder.

The defense counsel for William Clifton Offord, Jr. was called to the stand in the contempt proceedings and testified that he had no knowledge as to whether or not the State had used any direct evidence which had been obtained from informants. He explained that the reason he felt that the informant's name was necessary was because the name of the owner of the knife in question was of vital importance to the defense of his client, and he claimed that the original person who had been indicted for the crime, namely, Charles Ralph Offord, brother of the accused William Clifton Offord, Jr., owned the knife. He admitted, however, that he knew the informant could only testify that Charles Ralph Offord had a knife similar to the one that was offered in evidence. And he also admitted that the State would have so stipulated as to the informant's testimony.

After hearing argument of counsel for both sides, the lower court entered a finding that Sergeant Gulick was in contempt and imposed a fine of $25.00 and a suspended 60 day confinement. It is from this contempt conviction that the appellant appeals.

The trial court in the Offord case was confronted with alternatives of a most serious and vexing nature. In order to bring them into focus we deem it helpful to recite a pertinent part of the court's opinion rendered in the contempt proceedings:

"In reaching the verdict herein the Court has con-

sidered the public interest in the use of and in the continuing use of informers; and that a qualified privilege against the identity tends to encourage disclosures by informants. However, the general privilege of the State to withhold the identity of an informer must give way to the right of the accused to obtain relevant and competent evidence when necessary to his defense when the circumstances warrant it.

"It is the Court's view that the facts and circumstances in the case of the *State of Maryland v. Clifton W. Offord, Jr.* [William Clifton Offord, Jr.] are extremely unusual in that a person other than the defendant then on trial in Criminal No. 8819 was indicted for the crime of first degree murder alleged against the defendant, and that the indictment was nolle prossed. And, further, the grand jury minutes released to the defendant by Judge Moore reflect that the unidentified informant in question had told Sgt. Gulick, in effect, that the alleged murder weapon, a knife, might have belonged to a person other than the defendant. Since the murder weapon was offered in evidence the owner thereof, coupled with other evidence that a similar knife was flashed at or near the scene of the alleged murder a short time before the attack on the deceased, the name of the owner or the one in possession of the knife is highly relevant and for such reason the informer's name and his testimony should be available to the defendant in that it is essential to the fair determination of the issues."

We agree with the lower court's statement of the law, as to the general privilege accorded the State to withhold the identity of an informer in a criminal proceedings and the exception given when the dominant right of the accused to a fair trial requires disclosure on the premise that the identity of the informer is necessary to his defense. *Drouin v. State,* 222 Md. 271, 160 A. 2d 85 (1960). However, we disagree with the appropriateness of the application of the exception under the facts

of the criminal proceedings which give rise to the contempt citation in the case at bar.

An exhaustive review of the law on the subject of the privilege of disclosure afforded the State regarding the identity of an informer and its recognized exceptions, may be found in the opinion of this Court, written by Judge Prescott (later C.J.), in *Drouin, supra.* The views of Professor Wigmore and other leading text writers, as well as numerous decisions from state and federal jurisdictions, are cited in *Drouin,* including the opinion of the United States Supreme Court in *Roviaro v. U. S.,* 353 U. S. 53 (1957), discussed in the briefs of both parties to this appeal. It would serve little purpose to repeat what has been covered so thoroughly in *Drouin,* except to state that a distillation of the law found therein, as the same may be applicable to the case at bar, establishes the principle that the trial court in the exercise of its sound discretion shall compel the identity of the informer to be disclosed, if it is of the belief that, "the name of the informer is useful evidence to vindicate the innocence of the accused, lessens the risk of false testimony or is essential to a proper disposition of the case, * * *." *Id.* at 286.

The cases universally recognize the exception to the nondisclosure privilege where the informer was a participant, accessory or witness to the crime. See *McCoy v. State,* 216 Md. 332, 337, 140 A. 2d 689 (1958) 76 A.L.R.2d 267, 287, 289; *The Evidence Handbook, Donigan & Fisher,* (1965) Evidentiary Privileges § 7, pg. 214.

Most of the cases, including *Drouin,* involving the question of the demand for the disclosure of the identity of an informer, result from the accused's attempt to vitiate the grounds of probable cause attendant to his arrest or with reference to the issuance of a search warrant, the fruits of which were incriminating. This, of course, is not the situation in the instant case which is concerned with the disclosure of the identity of an individual who gave the law enforcement authorities a "tip" on the relevancy to the crime of an object already in their possession. However, we think the same test prevails in the case at bar, as was set forth in *Drouin,* namely, is the disclosure necessary to the accused's defense in the sound discretion of the court.

It should be noted that in *Roviaro v. United States, supra,* the Supreme Court recognized that where the trial court in the exercise of its discretion found that disclosure was necessary to a proper defense, that it had two alternatives, (1) to compel disclosure and, (2) if the government refused to accede, to dismiss the action. This same choice of options was recognized in *U. S. v. Keown,* 19 F. Supp. 639, (D.C. Ky. 1937) wherein the court stated:

> "* * * and sometimes the departments of government will be put to a choice of either foregoing a criminal prosecution or disclosing the source of material information necessary to the conduct of orderly judicial procedure." *Id.* at 646.

See also *Priestly v. Superior Court,* 330 P. 2d 29 (Cal. 1958).[3]

In *Drouin, supra,* it would also appear that this Court did not consider a citation for contempt for nondisclosure, among the alternatives from which the trial court should choose, when confronted with this issue; the Court stating: "* * * disclosure should be compelled, *or the evidence obtained by reason of the arrest and search suppressed."* (Emphasis supplied.) It should be noted that in *Roviaro, supra; Keown, supra; Priestly, supra; McCoy, supra* and *Drouin, supra,* the prosecution was not for the serious crime of first degree murder, as in the case at bar, hence the reluctance of the trial court to agree with the proposal of the State that serious consideration would be given to "dropping the whole case altogether, rather than reveal his name," is understandable.

However, we do not think that it should have become necessary for the trial judge to have considered the alternative of accepting a dismissal of the case by the State, for the reason

---

**3.** In *Rollings v. State,* 5 Md. App. 495 (1968), a "probable cause" case, the Court of Special Appeals in affirming the lower court's withholding of the name of the informer, cites *McCray v. Illinois,* 386 U. S. 300 (1967), wherein the Supreme Court distinguished between the need to produce the identity of the informer, when it is relevant to the question of guilt or innocence of the accused, as contrasted with the need to disclose, where the question involved is probable cause for arrest *at a preliminary hearing.*

that we are of the opinion that the lower court did not exercise its sound discretion in compelling disclosure of the informer. We state this, because we do not think that under the facts and circumstances of this case the identity of the informer was necessary and relevant to the fair and competent defense of the accused. Each case must be judged on its own facts and circumstances. In *State v. Edwards,* 317 S.W.2d 441 (Mo. 1958) the Court said:

> "* * * Each case is ruled in the light of its facts * * * if due regard be given to the demands of justice to the public on the one hand and the constitutional rights of the defendant on the other, each case must be considered on its merits." *Id.* at 446.

In the case at bar the informer was not a participant, accessory or a witness to the crime. The only matter which may have been material to the crime, concerning which he had personal knowledge, was that he had seen the brother of the accused playing with a knife similar to that which the State endeavored to introduce into evidence as the murder weapon. However, the knife in question was never received in evidence and the State was agreeable to the court's instructing the jury that the knife was not in evidence. At the hearing on the contempt citation the attorney for Offord, the accused in the criminal proceedings, testified that the reason he wanted to know the identity of the informer was so that he could have him testify before the jury that the knife did not belong to the accused but "more probably than not was owned by * * * Charles Ralph Offord," (the brother of the accused). If this was the reason the informer's testimony was necessary to the defense of the accused, and we assume it was, as the defense counsel so testified, the end sought to be accomplished by the defense counsel was readily at hand, as the State offered to stipulate that the informer would testify that he saw the knife in the possession of Charles Ralph Offord and not William Clifford Offord, Jr., the accused; however, this stipulation at the time of the criminal trial, was not acceptable to defense counsel.

One cannot fault the counsel for the defense in the criminal proceedings for pushing for disclosure, even though the State

offered to stipulate that matter which the defense counsel thought to be necessary to a fair defense. It should be borne in mind that, by insisting upon the disclosure of the identity of the informer, the defense counsel had excellent prospects of the State dropping all charges, as the State indicated that it might do so, rather than disclose the informant's name. Also, a competent defense counsel, as is apparent in this case, seldom overlooks the opportunity, when it is presented, to embark on a fishing expedition in the hope of coming up with some hither-to unknown flaw in the adversary's case. However, neither of these two tactical maneuvers substitutes for the prerequisite of showing the identity of the informer to be necessary and revelant to the accused's defense.

The trial judge, confronted with a most frustrating turn of events in the conduct of the trial, found the informer's name to be necessary to the fair defense of the accused; however, as stated, we are not of the same mind. We believe that the trial court's insistence on disclosure, under the threat of contempt, was arbitrary action and an abuse of the court's discretion. In reaching this conclusion we think it only fair to state that we realize that in the forum of the courtroom, and particularly so in the trial of a capital offense case, issues may come to a climax with dramatic suddenness, and frequently the trial judge must render a ruling without the benefit of a written transcript of the testimony to peruse or the briefs of counsel to assist him, with all of which the appellate court is favored.

Long before Victor Hugo immortalized Inspector Javert, in the pages of "Les Misérables" the use of the informer had been well established in the annals of criminal detection. The problem calls for a balancing of the public interest in protecting the flow of information against the individual's equal, if not predominant, right to a fair defense. The privilege of nondisclosure of the informer is not absolute, but it must not be withdrawn unless a necessity for the identity, and its relevancy to a fair defense, is demonstrated. We do not think that this necessity or relevancy was shown in this case.

*Judgment reversed, appellee to pay costs.*