607 A.2d 24

**Dwight Cornelius WARRICK**

v.

**STATE of Maryland.**

**No. 102, Sept. Term, 1991.**

Court of Appeals of Maryland.

June 9, 1992.

**698**

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and BELL, JJ.

MURPHY; Chief Judge.

This case involves the denial of a motion to compel disclosure of the identity of a state confidential informer in a narcotics prosecution; and whether, where the accused asserts the defense of mistaken identification, it was error to conclude that the informer's identity was irrelevant and that disclosure was therefore not compelled.

I.

In *Brooks v. State,* 320 Md. 516, 578 A.2d 783 (1990), we set forth the law governing the scope of the State's privilege to withhold disclosure of the identity of its confidential informers in criminal cases. The case now before us illustrates the need to repeat these relevant legal principles.

The purpose of the privilege is to further and protect the public interest in effective law enforcement. *Roviaro v.*

*United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). In *McCray v. Illinois*, 386 U.S. 300, 308, 87 S.Ct. 1056, 1061, 18 L.Ed.2d 62 (1967), the Supreme Court, quoting 8 J. Wigmore, *Evidence* § 2374 (McNaughton rev. 1961), said:

" 'Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed.... Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship.' "

The informer's privilege is especially important " 'in the enforcement of ... narcotics laws, [since] it is all but impossible to obtain evidence for prosecution save by the use of decoys. There are rarely complaining witnesses.' " *Lewis v. United States*, 385 U.S. 206, 210–11, n. 6, 87 S.Ct. 424, 427, n. 6, 17 L.Ed.2d 312 (1966) (quoting Model Penal Code § 2.10, comment, p. 16 (Tent.Draft No. 9, 1959)). *Accord McCray*, 386 U.S. at 312, 87 S.Ct. at 1063.

 While the State's interest in maintaining the anonymity of its informers is manifestly important, that interest is necessarily circumscribed by the defendant's interest in a fair trial. In this regard, the Supreme Court held in *Roviaro* that the privilege is limited by fundamental fairness requirements when determining the guilt or innocence of the accused. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." 353 U.S. at 60–61, 77 S.Ct. at 628. This is the applicable standard when determining whether the State's privilege accedes to the defendant's constitutional rights of due process and confrontation. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 870, 102 S.Ct. 3440, 3448, 73 L.Ed.2d 1193 (1982). *See also* Md.Rule 4–263(c)(2).

■ *Roviaro* did not impose any absolute rule of when an informer's identity must be disclosed. *Id.* 353 U.S. at 62, 77 S.Ct. at 628. *See also McCray, supra,* 386 U.S. at 311, 87 S.Ct. at 1062. Instead, the Court required trial judges to balance the public interest in protecting the flow of information against the individual's right to prepare a defense. *Roviaro,* 353 U.S. at 62, 77 S.Ct. at 628. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* The Court suggested three defenses for which an informer's identity could be vital: entrapment, lack of knowledge of the contents of a package, and, as in this case, mistaken identity. *Id.* 353 U.S. at 64, 77 S.Ct. at 629.

In *Roviaro,* the informer and the accused were the sole participants in a drug transaction, the testifying police officers only listened to the transaction or watched it from afar, the accused did not know the informer, and the defense was entrapment. The Court, applying its balancing test, held that the informer's name should have been released. In so holding, it noted that the informer's "possible testimony was highly relevant and might have been helpful to the defense," *id.* 353 U.S. at 63–64, 77 S.Ct. at 629, in part because he was the "only witness [other than the accused] in a position to amplify or contradict the testimony of government witnesses." *Id.* at 64, 77 S.Ct. at 630.[1]

■ Relying on *Roviaro,* we have interpreted the nondisclosure privilege to be inapplicable "whenever the informer was an integral part of the illegal transaction." *McCoy v. State,* 216 Md. 332, 337, 140 A.2d 689 (1958), *cert. denied sub nom., McCoy v. Pepersack,* 358 U.S. 853, 79 S.Ct. 82, 3

---

1. *Roviaro* recognized, 353 U.S. at 64, 77 S.Ct. at 629, that the only other option was to require the accused to take the stand in his own defense, an option which severely impacted upon the accused's Fifth Amendment right not to testify.

L.Ed.2d 87 (1958). We noted that "[t]he cases universally recognize the exception to the nondisclosure privilege where the informer was a participant, accessory or witness to the crime." *Gulick v. State*, 252 Md. 348, 354, 249 A.2d 702 (1969).

■ We have stressed that trial courts must apply the *Roviaro* balancing test in each case, regardless of the labels attached to the informer's role. *Gulick*, 252 Md. at 354, 249 A.2d at 706; *Drouin v. State*, 222 Md. 271, 286, 160 A.2d 85 (1960). Clearly, the practical application of the balancing test is more rudimentary in some cases. For example, the privilege ordinarily applies where the informer is a mere "tipster," who supplied a lead to law enforcement officers but is not present at the crime, while disclosure is usually required when the informer is a participant in the actual crime. *United States v. Brinkman*, 739 F.2d 977, 981 (4th Cir.1984); *Jones v. State*, 56 Md.App. 101, 110, 466 A.2d 895 (1983). The balancing test should be applied in all cases. As noted in *Nutter v. State*, 8 Md.App. 635, 262 A.2d 80 (1970), the key element is the materiality of the informer's testimony to the determination of the accused's guilt or innocence, balanced against the State's interest in protecting the identity of the informer.

## II.

The petitioner, Dwight Warrick, was charged in the Circuit Court for Talbot County with distributing a controlled dangerous substance in violation of Maryland Code (1992 Repl.Vol.), Art. 27, § 286. At a jury trial in that jurisdiction, Maryland State Trooper Vones Jamison, Jr. testified that, on January 19, 1990, he was assigned to the Talbot County Narcotics Task Force. On that evening, he was on duty in an undercover capacity in the parking lot of a tavern known as Wetcher Whistle. Jamison said that he first saw a man, whom he later identified as Warrick, while standing approximately thirty-five to forty feet away from him. Jamison testified that Warrick was then clad in a

baseball cap, a full-length leather coat that covered his shirt, and dark jeans; and that he had a thin moustache that was connected to his beard. According to Jamison's testimony, at approximately 9:15 p.m., he saw Warrick for the second time when he was introduced to him in the tavern parking lot. He said that Warrick was wearing the same clothing and that, after a short face-to-face conversation with him, he asked Warrick where he could purchase a quantity of crack cocaine. Warrick responded by producing a small container from his jacket pocket and pouring approximately ten to fifteen pieces of crack cocaine into his hand. Warrick invited Jamison to select the piece that he wanted; Jamison did so and gave Warrick a $20 bill. Jamison testified that on the night of the transaction, the parking lot was lighted by store and street lights and by lights from cars that were entering the lot.

Jamison saw Warrick again on February 1, 1990. He said that Warrick was then a passenger in a moving vehicle on the highway. Shortly thereafter, Jamison pulled alongside of the vehicle in which Warrick was traveling. He waved to Warrick and Warrick waved in response. Subsequently, Warrick and his companion entered a road leading toward Cordova, Maryland. Jamison said that he met Warrick again that same day, spending approximately five minutes with him. Later that day, Warrick was arrested.

On cross-examination, the trooper was asked who had introduced him to Warrick on January 19 in the tavern parking lot. The prosecutor objected. In response, Warrick maintained that that information was relevant because "the identification of the defendant is the keystone in this case." Warrick's counsel stated that she wanted to know "who provided [the trooper] information that there was someone on the street named Dwight Warrick, to connect him with this man or with someone else." She said that the only information contained in the report given to her by the State's Attorney concerned a direct hand-to-hand sale; no intermediaries or confidential informants were mentioned in the police report. At this juncture of the case, the court

asked, and the prosecutor acknowledged, that the person who introduced the trooper to Warrick was a confidential informant and that that information had not been provided to Warrick prior to the commencement of the trial.[2]

Against this background the court sustained the prosecutor's objection to the requested disclosure of the informant's identity. It said that the name of the person who introduced the trooper to Warrick was not "particularly germane or relevant." The court explained its ruling:

> "If this were a case where that person had performed some service or duty or action outside the presence of this Trooper in connection with this case, the Court would have a far more serious problem. But in this case, the only thing that this alleged third person did was allegedly done in the presence of both the Trooper and the defendant simultaneously. Therefore, his identification, his name, is totally irrelevant. It doesn't make any difference who he was as long as he was one of the several billion people on the face of the earth. And the Trooper's testimony will stand or fall on its own weight."

Warrick's further cross-examination of the trooper undertook to establish that several other men of Warrick's approximate size and build frequented the neighborhood of the Wetcher Whistle.

Warrick testified in his own behalf. He denied selling cocaine to the trooper or ever having seen him prior to pretrial proceedings. He testified that two of his friends, whom he named, and who sometimes frequented the tavern, bore a resemblance to him. On rebuttal, Trooper Jamison testified that on February 1, when he encountered Warrick driving on the highway, one of Warrick's named friends was driving the vehicle.

---

**2.** Because Warrick had no notice of the involvement of the confidential informant, a pretrial motion was not filed. *See* Md.Rules 4–263(c)(2) and 4–252(c). The trial court treated Warrick's request for disclosure of the informant's identity as a motion for that purpose.

The jury found Warrick guilty of distributing cocaine, and he was sentenced to a term of imprisonment. The Court of Special Appeals, in an unreported opinion, affirmed the judgment. It held that Warrick's bald assertion that the confidential informant may have supported his defense of mistaken identification was "mere conjecture about the relevance of the informant's identification" and was an insufficient basis to compel disclosure. In so holding, the intermediate appellate court said that the trial court had applied the *Roviaro* balancing test, as articulated by us in *Brooks*. In this regard, it noted that before denying the motion, the trial judge "had a bench conference, asked questions, heard arguments ...[,] considered what had transpired ... [and concluded] that the identity of the informant was unnecessary and not critical to a fair defense."

Warrick filed a petition for certiorari, which we granted, to consider his contention that the Court of Special Appeals departed from our holding in *Brooks v. State, supra,* when it denied his request for disclosure of the informant's identity.

### III.

In *Brooks*, the petitioner was convicted of unlawful distribution of cocaine. The crime occurred when two undercover police officers drove onto a parking lot, accompanied by an informer. While seated in the car, the informer, who knew Brooks, called out to him. Brooks came over to the car and after some discussion with the undercover officers, Brooks agreed to obtain some cocaine for them. Shortly thereafter, Brooks returned to the car with the cocaine and sold it to the officers. Almost two months later, Brooks was arrested as the seller. He asserted that he had not sold the cocaine and that the officers were therefore mistaken about the seller's identity.

Before trial, Brooks moved to compel disclosure of the informer's identity, claiming that the informer's testimony

was necessary to bolster his defense by undermining the officers' identification of him as the seller. The trial judge denied his motion, ruling that the informer was a mere "tipster," and disclosure of his identity was therefore not required. The court did not balance the respective interests of the State and the defense, as required by *Roviaro*. We reversed the conviction and remanded for a new trial, holding that the trial judge erred in viewing the informer as a mere "tipster" and in concluding that this label relieved him of the obligation to apply the *Roviaro* balancing test.

■ As in *Brooks*, the present case involves the use of a confidential informant to arrange an illegal sale of cocaine to undercover police officers in a parking lot. In each case, the confidential informer introduced the officers to the seller. While the informer was present throughout the transaction in *Brooks*, it is not entirely clear from the record in this case whether the informer was present during the actual exchange of drugs for money.[3]

We expressly rejected the State's contention in *Brooks* "that the nondisclosure privilege applies when an informer merely points out or introduces a defendant to an undercover officer and is only a witness to, not a participant in, the illegal transaction." 320 Md. at 525, 578 A.2d at 788. To adopt such a rule, we said, would ignore the application of the *Roviaro* balancing test. *Id.* Manifestly, when an informer introduces an undercover officer to a suspected drug dealer for the purpose of facilitating a drug sale, the informer's identification of, or failure to identify, the accused may constitute highly relevant testimony when, as here, and as in *Brooks*, a colorable dispute as to the

---

3. On this point, the trooper's testimony was as follows:
 "I was introduced to the defendant. I had a short conversation with him. I asked the defendant, 'Where can I purchase a twenty piece,' which is a street term for $20 worth of crack cocaine. The defendant replied that he had what I was looking for.... He removed a small container from his jacket pocket, and poured ten to fifteen small pieces of suspected crack cocaine into his hand."
 The trooper made no other mention of the informer.

accused's identity is presented in the case. As *Roviaro* teaches, 353 U.S. at 60–61, 77 S.Ct. at 627–28, the State's nondisclosure privilege may be circumscribed where, in a mistaken identification case, the informer's identity may be relevant and helpful to the defense or essential to a fair determination of the case. Because there is no absolute rule governing disclosure of an informer's identity, trial judges must balance the public interest in protecting the flow of information against the individual's right to present a defense. In this regard, as we earlier observed, striking the correct balance "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62, 77 S.Ct. at 629.

As we see it, the trial judge in the present case did not balance the respective interests of the State and the defense. Indeed, it appears that he simply concluded that because the evidence showed that the informer, the trooper, and Warrick were together in the parking lot, the informer's identity was "totally irrelevant." The trial judge seemingly ignored the possibility that Warrick sought the disclosure of the informer's identity because he truly was misidentified by the officer as the seller, and was therefore not at the scene of the crime to know the informer's identity. In these circumstances, it is hardly beyond reason that the informer, who knew the seller, might exonerate him.

On the record before us, we are unable to say, as a matter of law, that disclosure of the informer's identity was constitutionally required. Because the State characterized the person who allegedly introduced the trooper to Warrick as a confidential informer, we can fairly assume that the informer played some part in the facilitation of the illegal sale. Whether the informer set up the sale, was present during the transaction, or witnessed the exchange is not shown by the record. Nor does the record disclose when the introduction was made in relation to the time of the actual sale. And, as we have said, whether the informer's

identity must be disclosed is a decision for the trial court after a proper balancing of the respective interests of the parties according to the principles set forth in *Roviaro* and *Brooks* and in this opinion. That the trial judge erred in failing to engage in the balancing test does not, in the circumstances of this case, require that we reverse Warrick's conviction and grant him a new trial. This is so because if Warrick is unable to establish that he is entitled to disclosure of the informant's identity, or if the State can prove that he was not prejudiced by nondisclosure, there would be no reason to afford him a new trial. Thus, to require a new trial before there has been a determination of whether the State has wrongfully or prejudicially withheld the identity of the informer is unwarranted.

We think the appropriate disposition in this case is to remand the matter to the trial court under Maryland Rule 8–604(d), which provides, in relevant part:

"If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court.... Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court."

Manifestly, in seeking the identity of the informant, Warrick sought to discover potentially exculpatory evidence that he was not the person to whom the informer made the introduction. Conversely, if the informer said that it was Warrick to whom he introduced the trooper, that testimony would corroborate the trooper's identification of Warrick as the seller of the illegal drugs.

To remand the matter to the trial court under Maryland Rule 8–604(d) to determine whether Warrick is entitled to the disclosure of the informant's identity, and to determine whether Warrick has been prejudiced by the nondisclosure, is consistent with numerous federal and state court cases which have approved the use of an *in camera* examination

of the informant in order to properly apply the *Roviaro* balancing test, or to assess the prejudice of a wrongful failure to disclose the identity of an informant.

Thus, in *Gaines v. Hess*, 662 F.2d 1364 (10th Cir.1981), an undercover police officer, who had been accompanied by an informer, testified that he purchased drugs from the defendant on a parking lot. The defendant was convicted. The issue on appeal was whether the trial court erred in not compelling disclosure of the informer's identity to the defendant, whose defense was mistaken identification. In reviewing the principles of *Roviaro*, the court said:

> "[W]ithholding the identity of an informant who may be critical to the conduct of the defense infringes the defendant's constitutional right to a fair trial, which obviously includes the right to adequately prepare and present that defense. *Roviaro* clearly establishes that a blanket disclosure rule is not required. Only under circumstances in which nondisclosure would deprive the defendant of his due process right to a fundamentally fair trial is disclosure constitutionally mandated."

662 F.2d at 1368. The court noted that there was evidence that the informant set up the transaction and was the only witness to the sale other than the undercover police officer and the seller. *Id.* The court further recognized that the informant was in a position to corroborate or discredit the officer's testimony, and that it would, upon these facts, violate the defendant's due process rights to deny disclosure if, in fact, the informant could provide potentially significant exculpatory testimony. Under these circumstances, the court concluded, *id.* at 1369, that

> "an *in camera* hearing is the appropriate procedural vehicle for determining whether the informant's testimony would lend significant credence to Gaines' defense. Such a procedure will limit the extent of the disclosure of the informant's identity and information, thereby protecting the State's interest in avoiding unnecessary disclosure, while at the same time it will safeguard defendant's

right to the testimony of any accessible witness who may be significantly helpful to his defense."

The court said that the value of the *in camera* hearing as a device to ensure proper application of the *Roviaro* test had been recognized in other circuits, citing *United States v. Cortese*, 614 F.2d 914, 921–22 (3d Cir.1980); *United States v. Weir*, 575 F.2d 668, 672–73 (8th Cir.1978); *United States v. Freund*, 525 F.2d 873, 877 & n. 5 (5th Cir.) (citing additional cases), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 377 (1976).

The court in *Gaines* observed that the *in camera* procedure "has the advantage of giving the trial court considerable flexibility in determining if disclosure is warranted." *Id.* Where identity is at issue, the court explained, "the informant might be shown a picture of the defendant," leaving to the trial court "how best to determine the relevance of the informant's testimony, although the *in camera* proceedings should be transcribed and sealed to permit meaningful review while retaining limited disclosure." *Id.* If the State is unable to produce the informant, the court stated that the trial court, after an *in camera* hearing, could make appropriate findings. If it determined that disclosure was not required by due process considerations, "the findings may be in terms which will protect the identity of the informant, as will the sealing of the record of the *in camera* proceeding." *Id.*, 662 F.2d 1364, n. 4. Conversely, if the informant would make an exculpatory witness, the trial court could enter an order permitting the State a reasonable time to retry the defendant, with the informant available, or otherwise dismiss the prosecution.

*United States v. Price*, 783 F.2d 1132 (4th Cir.1986), recognized the validity of the *in camera* proceeding in informant disclosure cases, but rejected its use in the circumstances of that case. There, the defendant was charged with theft from an interstate shipment of meat. A confidential informer "set up" the criminal transaction and was an active participant in it. *Id.* at 1139–40. Prior to trial, the defendant sought the identity of the informer. The trial

judge denied the motion without a hearing, and the defendant was found guilty. On appeal, the defendant maintained that nondisclosure of the informer's identity caused prejudice to his defense of duress and entrapment. The court, while holding that the trial judge erred in denying the motion, said that the question before it was "whether to reverse the conviction, or simply remand the case to the district court for an evidentiary hearing." *Id.* at 1140. It noted that in some cases the record showed "that the informants were so closely connected with the criminal transactions ... that failure to disclose their identity was reversible error." *Id.* Conversely, citing *Gaines v. Hess, supra,* the Fourth Circuit recognized that some courts, rather than granting a new trial, have remanded for a hearing either "to engage in the *Roviaro* balancing test or to assess the harm to the defendant's case of a wrongful failure to disclose an informant's identity." *Id.* The court said that "the propriety of remanding a case for an evidentiary hearing depends on the particular circumstances of the case." *Id.* Because of the informer's direct and ongoing participation in the criminal episode, the court in *Price* concluded that disclosure "was required as a matter of law," *id.*, and that a new trial, rather than a remand, was necessary.

In *United States v. Moralez,* 908 F.2d 565 (10th Cir.1990), the court was unable to determine from the record whether the trial judge conducted the *Roviaro* balancing test and whether the disclosure was essential to the fair determination of the case; it, therefore, remanded the case to the trial court for the limited purpose of conducting an *in camera* proceeding. In that case, a federal agent received information from a confidential informer that the defendant was selling drugs from a service station. The defendant was arrested and moved for disclosure of the confidential informer's identity, claiming that he was not involved in the illegal drug operation. The Government claimed that the informer was only a tipster who was not present when the crime occurred. The trial judge denied the disclosure mo-

tion without taking any evidence or receiving any offers of proof. In remanding the case for an *in camera* examination, the appellate court found nothing in the record that shed any light on the basis upon which the district court concluded that the confidential informant was not an active participant in the crime, or whether and how it balanced the benefits of disclosure against the resulting harm to the Government. *Id.* at 568. It, therefore, remanded for the district court "to hold *in camera* hearings to determine whether the informant's testimony is relevant and whether disclosure is warranted." *Id.* at 569. (Citations omitted). The court concluded as follows:

"If the district court decides the identity of the confidential informant should have been revealed under the proper standards, then the district court should vacate the sentence, and Mr. Moralez should be given a new trial with the benefit of the additional testimony. If the district court concludes disclosure is not required, it shall make its findings in terms which will protect the identity of the informant. The case should thereafter be returned to this court with notice, and the parties may apply for additional briefing of the issues."

Other federal cases have also recognized the use of *in camera* proceedings to engage in the *Roviaro* balancing test, or to assess the prejudice to the defendant from a wrongful failure to disclose an informant's identity. *See, e.g., United States v. Panton,* 846 F.2d 1335, 1336–37 (11th Cir.1988); *United States v. Sharp,* 778 F.2d 1182, 1187 (6th Cir.1985); *United States v. Tenorio–Angel,* 756 F.2d 1505, 1509 n. 7 (11th Cir.1985); *United States v. Ordonez,* 737 F.2d 793, 809 (9th Cir.1984); *United States v. Fischer,* 531 F.2d 783, 788 (5th Cir.1976).

Consistent with these federal authorities are a number of state court cases involving remands from appellate courts to trial courts for *in camera* proceedings in informant disclosure cases. *See, e.g., Sowers v. State,* 194 Ga.App. 205, 390 S.E.2d 110 (1990) (remanded for an *in camera* proceeding to determine whether nondisclosure of infor-

mant's identity was harmless error); *State v. Mansfield,* 175 W.Va. 397, 332 S.E.2d 862 (1985); *State v. Outlaw,* 108 Wis.2d 112, 321 N.W.2d 145 (1982). *See also People v. Dailey,* 639 P.2d 1068 (Colo.1986); *State v. Acosta,* 439 So.2d 1024 (Fla.App. 3 Dist.1983); *Com. v. Douzanis,* 384 Mass. 434, 425 N.E.2d 326 (1981); *State v. Ford,* 322 N.W.2d 611 (Minn.1982); *State v. Perez,* 102 N.M. 663, 699 P.2d 136 (1985); *People v. Darden,* 34 N.Y.2d 177, 356 N.Y.S.2d 582, 313 N.E.2d 49 (1974); *State v. Bailey,* 41 Wash.App. 724, 706 P.2d 229 (1985); *State v. Tamez,* 169 W.Va. 382, 290 S.E.2d 14 (1982).

Text writers have also suggested *in camera* hearings as an appropriate disposition in the resolution of informant privilege issues. *See* 1 Lynn McLain, *Maryland Evidence,* § 510.1 at 587 (1987), and cases cited therein ("An *in camera* hearing of the probable testimony which the informer would give may be appropriate."); 1 *McCormick on Evidence,* § 111 at 411 (John W. Strong, 4th ed. 192) (noting that in assessing the balance between the defendant's need for disclosure of the informant's identity and the Government's interests in protecting the informant's identity "the expedient widely used, and sometimes seemingly required, is an *in camera* hearing on the nature of the informant's probable testimony"); the commentary to the *American Bar Association Standards for Criminal Justice* (2d ed.), Standard 11–2.6 (relating to "discovery and procedure before trial") notes, with apparent approval, the use of *in camera* proceedings to weigh the conflicting interests of the defendant and the State when determining whether an informant's identity should be disclosed; Richard McNamara, *Constitutional Limitations on Criminal Procedure,* § 10.02 at 156 (1982):

"In recent years, numerous courts have suggested that, before ruling on whether disclosure should be required, the court should conduct an in camera interview of the informer, and ask questions submitted in writing by defense counsel. Some courts have even been willing to allow defense counsel, but not the actual defendant, to

attend the in camera hearing with the proviso that the defense counsel be placed under an enforceable civil order not to reveal the identity of the informant." (Footnotes omitted.)

It would, of course, serve no useful purpose to afford Warrick a new trial if, on remand, he is unable to demonstrate that he is entitled to the name of the informant. Nor should he be given a new trial if the State, following an *in camera* examination of the informant, is able to prove that the defendant was not prejudiced and that nondisclosure did not "impact on the fairness of the trial." *See Robert George Williams v. State of Maryland*, 326 Md. 367, 382, 605 A.2d 103, 110 (1992).

Accordingly, we shall remand the case to the circuit court for the purpose of holding an *in camera* hearing at which time the State will be required to produce the informant for examination by the court. In the circumstances of this case, we think that Warrick's counsel should be present at the hearing and afforded an opportunity to cross-examine the informant. As in *Gaines* and *Moralez,* we think defense counsel should be ordered by the court not to disclose to anyone, including Warrick, the identity of the informant or information likely to lead to the identity of the informant. We also direct that the *in camera* proceedings be recorded and sealed. Should the trial court decide that the informer's identity need not be disclosed, it shall enter the prior judgment of conviction. Warrick may request further review and briefing of this issue by this Court. If the trial court concludes that Warrick was prejudiced by nondisclosure, and thus did not receive a fair trial, a new trial must be ordered. *See Zaal v. State*, 326 Md. 54, 81–87, 602 A.2d 1247 (1992).

CASE REMANDED WITHOUT AFFIRMANCE OR RE-VERSAL FOR FURTHER PROCEEDINGS IN ACCORD-ANCE WITH THIS OPINION; COSTS TO ABIDE THE RESULT.