626 A.2d 44

## Mario Troy GIBSON a/k/a Warren Troy Gibson

### v.

### STATE of Maryland.

### No. 112, Sept. Term, 1992.

Court of Appeals of Maryland.

June 14, 1993.

18

Melissa M. Moore, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), both of Baltimore, for petitioner.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), both of Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

This case is before this Court for the second time on the identical issue, namely how to balance the State's interest in concealing a confidential informant's identity against the defendant's need for disclosure of the informant's identity in preparation for trial. For the reasons discussed below, we hold that under the balancing test we have previously enunciated, the facts of this case compel disclosure of the informant's identity to the defense in preparation for trial.

## I.

At approximately 10:30 p.m. on January 11, 1990, Trooper John Bollinger of the Maryland State Police was working with an unidentified confidential informant in an attempt to make an undercover purchase of crack cocaine. Trooper Bollinger was in the Dover Street area of Easton when a man the trooper later identified as the defendant, Warren Troy Gibson, approached the passenger side of the car, where the confidential informant was seated, and asked the trooper what he wanted. The trooper indicated that he wished to purchase a small quantity of crack cocaine and was instructed to drive around the block to the parking lot of the Wetcher Whistle bar. There, the same man, described by the trooper as a black male approximately 25 years old, five-foot-ten to six foot,

180 to 200 pounds, with a beard, approached the driver's side of the car and handed the trooper a small amount of crack cocaine in exchange for $20. The total time that the trooper had to observe the crack seller, including the initial contact on Dover Street, amounted to approximately three minutes in the darkness of a midwinter night.

At a pretrial hearing to consider Gibson's motion to compel disclosure of the confidential informant, Gibson asserted that there was a substantial doubt as to whether he was properly identified as the cocaine seller and that it was essential to a proper defense that the confidential informant testify with respect to the identification issue. Defense counsel asserted that the trooper identified the cocaine seller as having a beard, but the defendant did not have a beard on the date of the alleged sale. Defense counsel also proffered that the confidential informant, who was present during the transaction, had identified the seller of cocaine as a person named "Mario," but that the defendant had never been known as "Mario." The State countered that it did not intend to call the confidential informant as a witness, nor was it aware of any exculpatory or other evidence possessed by the informant which it was required to disclose under the principles of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The trial judge denied disclosure of the informant's identity, finding "determinative" the State's submission that it would not call the informant as a witness and the State's representation that any testimony by the informant would only be cumulative.

Gibson was tried before a jury in the Circuit Court for Talbot County on the charge of distribution of cocaine. At trial, the trooper testified that the confidential informant had identified the seller as "Mario," and that the trooper had used this name to mark the evidence and to identify the defendant. The trooper did not know the seller prior to the transaction and did not have any other contact with the seller prior to making the identification. In his report, the trooper described the seller as having a beard. He later testified that he meant a very light beard, perhaps only a few days' growth. The trooper also acknowledged that he made the identification of

Gibson one month after the drug transaction based on a photograph.

Gibson testified that on the night in question he had been at home watching television with his sister. Other witnesses also corroborated Gibson's alibi. Several defense witnesses testified that Gibson did not have a beard on the date of the sale and had never been known as "Mario." [1]

Gibson was convicted on the cocaine distribution charge. He appealed to the Court of Special Appeals, raising the question of whether the trial court erred by refusing to compel the State to disclose the identity of the confidential informant. The Court of Special Appeals affirmed the conviction in an unreported opinion. This Court granted Gibson's motion for writ of certiorari and, prior to argument, vacated the judgment of the Court of Special Appeals. *Gibson v. State*, 327 Md. 53, 607 A.2d 562 (1992). We remanded the case to the Court of Special Appeals for consideration in light of our recent decision in *Warrick v. State*, 326 Md. 696, 607 A.2d 24 (1992) in which we extensively discussed the informer's privilege.

Following our remand, the Court of Special Appeals, in another unreported opinion, again upheld the trial court's ruling that the State need not disclose the confidential informant's identity to the defense. In doing so, the court concluded that the trial court had properly engaged in the requisite balancing test described by the Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), under which the trial court must balance the public's interest

---

1. We note that the defendant has always maintained that his name is Warren Troy Gibson and that he was never known as "Mario." Nonetheless, he was indicted as Mario Troy Gibson. The State proceeded in this case with the caption reading "Mario Troy Gibson a/k/a Warren Troy Gibson v. State of Maryland," despite a motion for amendment granted at the pretrial hearing. Official court documents thus identified the defendant as "Mario." If any juror, or potential juror, saw any document naming the defendant as "Mario," or if in the presence of the jury when the case was called, Gibson was identified as Mario Troy Gibson, this may have constituted reversible error. In light of the result we ultimately reach in this case, we need not decide this issue.

in protecting the flow of information to law enforcement personnel against the defendant's right to prepare a proper defense. *Id.* at 62, 77 S.Ct. at 629, 1 L.Ed.2d at 646. Because the Court of Special Appeals found that the trial court invoked the classic language of a balancing test, it held that the court had complied with *Roviaro*, as well as with this Court's opinion in *Warrick*, when the trial court denied Gibson's pretrial motion to compel disclosure. We disagree, and we shall reverse.

## II.

The informer's privilege is a common law privilege allowing the government to withhold the identity of a confidential informant who has provided law officers with information about violations of the law. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639, 644 (1957).

In *Roviaro*, the government relied at trial on the testimony of two law enforcement officers to convict the defendant of a narcotics violation based on a drug transaction between an unidentified informant and the defendant, Albert Roviaro. One of the officers watched the transaction from some distance away, while another officer, who was secreted in the trunk of the car in which the transaction took place, could only hear, but not see, what was happening. The confidential informant participated in the transaction and was the only witness to it, other than the officers. A government witness also testified that, shortly after the drug transaction and shortly after Roviaro's arrest, the informant saw Roviaro and, at that time, denied knowing Roviaro and denied ever seeing him before. The Supreme Court held that the defendant had a right to disclosure of the informer's identity. The Court noted that the informer was the sole participant, other than the accused and the officers, that the informer was the only witness who could buttress or undermine the testimony of the government witnesses, and that after the drug sale, the infor-

mant denied that he knew or had ever seen Roviaro before. *Id.* at 64–65, 77 S.Ct. at 630, 1 L.Ed.2d at 647.

*Roviaro* did not impose any absolute rule as to when an informer's identity must be disclosed, but instead called for a balancing test that weighs the public interest in protecting the flow of information to aid in law enforcement against the defendant's right to prepare a proper defense. As the Supreme Court said, "[w]hether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 77 S.Ct. at 629, 1 L.Ed.2d at 646. The Supreme Court noted that requirements of fundamental fairness may limit the informer's privilege. Accordingly, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61, 77 S.Ct. at 628, 1 L.Ed.2d at 645 (footnote omitted). Although we have noted in the past that "[t]he cases universally recognize the exception to the nondisclosure privilege where the informer was a participant, accessory or witness to the crime," *Gulick v. State,* 252 Md. 348, 354, 249 A.2d 702, 706 (1969), we have also explained that the degree of participation of the informant is not necessarily dispositive of the need to disclose. In *Warrick v. State,* decided in the last term, we stressed

> "that trial courts must apply the *Roviaro* balancing test in each case, regardless of the labels attached to the informer's role. *Gulick,* 252 Md. at 354, 249 A.2d at 706; *Drouin v. State,* 222 Md. 271, 286, 160 A.2d 85 (1960). Clearly, the practical application of the balancing test is more rudimentary in some cases. For example, the privilege ordinarily applies where the informer is a mere 'tipster,' who supplied a lead to law enforcement officers but is not present at the crime, while disclosure is usually required when the informer is a participant in the actual crime. *United States v. Brinkman,* 739 F.2d 977, 981 (4th Cir.1984); *Jones v. State,*

56 Md.App. 101, 110, 466 A.2d 895 (1983). The balancing test should be applied in all cases. As noted in *Nutter v. State,* 8 Md.App. 635, 262 A.2d 80 (1970), the key element is the materiality of the informer's testimony to the determination of the accused's guilt or innocence, balanced against the State's interest in protecting the identity of the informer."

*Warrick,* 326 Md. at 701, 607 A.2d at 26–27; *see also Brooks v. State,* 320 Md. 516, 525, 578 A.2d 783, 788 (1990).

In *Warrick,* a case very similar to the instant case, an undercover cocaine sale took place at the same Wetcher Whistle parking lot. As in the instant case, the defendant also claimed mistaken identity. At trial, the undercover officer testified that a confidential informant introduced the cocaine dealer to him as Warrick. The dealer then sold the officer $20 worth of crack cocaine, and the arrest was made about two weeks later. After hearing this testimony, Warrick's counsel asked the officer to identify the person who had introduced the officer to Warrick. This issue had not been raised on a pretrial motion because there had been no mention of any intermediaries in the police report of the incident. The prosecution objected to the disclosure, acknowledging that the person who introduced the officer to Warrick was a confidential informant, and therefore the information had not been provided to Warrick prior to trial. The trial court sustained the objection, deeming the identity of the informant irrelevant. Testifying on his own behalf, Warrick denied selling cocaine to the officer or ever having seen him prior to the pretrial proceedings. He further testified that two of his friends bore a resemblance to him and frequented the area where the transaction took place. The jury convicted Warrick on the cocaine distribution charge. On appeal, the Court of Special Appeals affirmed the judgment, holding that Warrick's bald assertion that the confidential informant may have supported his defense of mistaken identification was mere conjecture, and was an insufficient basis upon which to compel disclosure. There, too, the Court of Special Appeals said that the trial court had applied the appropriate balancing test. We granted

Warrick's petition for certiorari and held that the trial judge had not balanced the respective interests of the State and the defense, but had merely concluded that, because the evidence showed the officer, Warrick, and the informant were all in the parking lot at the same time, the informant's identity was irrelevant. We stated that

> "when an informer introduces an undercover officer to a suspected drug dealer for the purpose of facilitating a drug sale, the informer's identification of, or failure to identify, the accused may constitute highly relevant testimony when, . . . a colorable dispute as to the accused's identity is presented in the case."

*Warrick*, 326 Md. at 705–06, 607 A.2d at 29.

In *Warrick*, we held that the trial judge had not applied the *Roviaro* balancing test to weigh the interests of the State and the defendant. We also noted that the record in *Warrick* left us unable to conclude whether disclosure of the informer's identity was constitutionally required. Thus, we remanded for "an *in camera* examination of the informant in order to properly apply the *Roviaro* balancing test, or to assess the prejudice of a wrongful failure to disclose the identity of an informant." *Id.* at 707–08, 607 A.2d at 30.

In the instant case, the trial judge made his ruling prior to our decision in *Warrick*. When we apply the standards developed in *Warrick* to his ruling, we believe the trial judge did not properly conduct a *Roviaro* balancing test. The importance of a balancing test lies in the consideration and weighing of the proper factors in making the determination, not the mere incantation of the balancing test. The key element in the balancing analysis is "the materiality of [the informant's] testimony to the determination of the accused's guilt or innocence. . . ." *Brooks v. State*, 320 Md. 516, 525, 578 A.2d 783, 788 (1990). The Supreme Court has also noted, "[t]he desirability of calling [the confidential informant] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." *Roviaro*, 353 U.S. at 64, 77 S.Ct. at 629, 1 L.Ed.2d at

647. Further, the trial court's labeling of the unheard testimony of the informant as "cumulative" was inappropriate where the informant was a material witness, and the court had no basis for concluding what the informant would have testified to.

█ We do not categorically hold that, in all cases where the informant was an eyewitness to the crime charged, the State must disclose the informant's identity, although that is an important factor weighing heavily in favor of disclosure. The balancing test must still be used, and there may be factors that weigh heavily in favor of the need to protect the confidential informant or which indicate the informant's testimony would not assist the defense. In this case, evidence presented at trial gave a strong indication that the informant's testimony could be helpful to the defense. The people closest to the defendant testified that he did not have a beard at the time of the drug transaction, while the undercover officer testified that the crack cocaine seller had a beard, although it may have been only a few days' growth. Depending on the defense's emphasis and trial strategy, the informant's testimony might have aided the defense whichever way the informant testified. If the informant testified the seller had no beard, it might have cast doubt on the trooper's observations and his identification. If the informant testified the seller had a beard, this might also have aided the defense and indicate Gibson, who several witnesses said had no beard, was not the seller. Additionally, the informant previously stated that the crack cocaine seller was a person named "Mario." Several witnesses testified, however, that the defendant had never used the name "Mario." Thus, there were ample indications that the informant's testimony may have aided the defense. Balanced against Gibson's need for the informant's testimony, there was scant evidence to weigh on the State's side of the scale in order to prevent disclosure. In this case, Gibson's right to present his defense clearly outweighed the State's interest in the privilege.

In *Warrick*, we remanded the case to the trial court to determine, via an *in camera* proceeding and applying the *Roviaro* balancing test, whether the State should be compelled to disclose the informant's identity. While an *in camera* proceeding can be an appropriate procedural vehicle in some cases, the case *sub judice* is not one of them. The purpose of an *in camera* proceeding is to " 'limit the extent of the disclosure of the informant's identity and information, thereby protecting the State's interest in avoiding unnecessary disclosure, while at the same time it will safeguard defendant's right....' " *Warrick*, 326 Md. at 708–09, 607 A.2d at 30 (quoting *Gaines v. Hess*, 662 F.2d 1364, 1369 (10th Cir.1981)). An *in camera* hearing may be used to protect the informant's identity where the State contends that the informant, although a participant, accessory, or witness to the crime charged, would merely corroborate the State's evidence and would provide no material assistance to the defense. But where, as in the instant case, the defendant has established that the confidential informant probably would give specific testimony helpful to the defense, then the defendant has met his burden and there is no need for an *in camera* hearing.

While the trial court did not conduct the proper balancing test in this case, we realize it did not have the benefit of our opinion in *Warrick* to guide its decision. The Court of Special Appeals had that guidance, but did not correctly apply it when reviewing the trial court's ruling. Given the facts of this case, we must remand with instructions that the defendant be granted a new trial. Prior to that trial, the State must identify the confidential informant or face dismissal of the case.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE CONVICTION FOR DISTRIBUTION OF COCAINE AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR TALBOT COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND*

**THE COURT OF SPECIAL APPEALS TO BE PAID BY
TALBOT COUNTY.**

McAULIFFE, Judge, concurring in part and dissenting in
part.

I join in the Court's opinion except for the determination
that the defendant is entitled to a new trial without any
further inquiry to determine whether nondisclosure of the
confidential informant prejudiced the defendant in any way.
In *Warrick v. State,* 326 Md. 696, 713, 607 A.2d 24 (1992), we
said:

> It would, of course, serve no useful purpose to afford
> Warrick a new trial if, on remand, he is unable to demon-
> strate that he is entitled to the name of the informant. Nor
> should he be given a new trial if the State, following an *in
> camera* examination of the informant, is able to prove that
> the defendant was not prejudiced and that nondisclosure did
> not "impact on the fairness of the trial." *See Robert George
> Williams v. State of Maryland,* 326 Md. 367, 382, 605 A.2d
> 103, 110 (1992).

The State should be given an opportunity to produce the
confidential informant, if it so elects, and to attempt to prove
that the defendant was not prejudiced by the earlier nondis-
closure.

Chief Judge MURPHY and Judge KARWACKI join in this
opinion.